The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

**Frank Deroy ASHTON, Defendant-Appellant.**

No. 80CA0017.

Colorado Court of Appeals, Div. II.

Aug. 12, 1982.

Rehearing Denied Sept. 23, 1982.

Certiorari Denied March 14, 1983.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Robert C. Lehnert, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for defendant-appellant.

BERMAN, Judge.

Defendant, Frank Deroy Ashton, appeals a jury verdict finding him guilty of two counts of first degree murder and two counts of body abuse. We affirm.

In the spring of 1978 an employee of the Colorado Division of Wildlife observed a pickup truck with Montana license plates at Haystack Rock in Dinosaur National Park. He also observed some litter and broken shrubbery. Investigating the area, and intending to speak to the driver of the truck about the litter, the employee looked over the cliff to see if anything had been thrown in the canyon below. He observed what appeared to be a body and made an immediate report.

Law enforcement officials returned to the scene with the employee. Upon observing and following tire tracks going up a hill on an old trail a couple of miles down the road from Haystack Road, the officials came upon a pick-up truck which was recognized by the park employee as that which had been parked earlier at Haystack Rock. Seated close by was the defendant. He commented that he had been expecting their arrival and that what they were going to find at Haystack Rock was not very pretty. The defendant was advised of his constitutional rights and arrested. The defendant does not contest the validity of the arrest.

The truck was impounded and officers conducted an inventory search of it. Among the items recovered from the truck was a rifle.

On the following day, two bodies were retrieved from the canyon. The victims were identified as neighbors of the defendant who had accompanied him on a journey east from Montana where they resided.

The defendant testified that he awoke one morning after falling asleep in the truck, and found the bodies of the women in the back of the truck. Realizing that it would not look good for him to contact law enforcement officials with these bodies in the back of his truck, he dropped them over the cliff. He returned to the cliff a number of weeks later and lowered a package of explosives to the ledge in order to cover the bodies. It was at this time that he was observed by the employee of the park division.

## I.

Defendant first contends that the trial court erred when it denied defense attorneys' requests to withdraw because they had an insufficient amount of time to prepare for trial. We disagree.

The defendant's first counsel was allowed to withdraw because of a conflict of interest. The trial court appointed the replacement counsel on October 30, 1978. On December 5, 1978, a co-counsel was appointed. Subsequent to these appointments, upon de-

fendant's waiver of a speedy trial, a motion for continuance was granted. On March 16, 1979, the defendant requested that his counsel be dismissed; the attorneys concurrently requested permission to withdraw. The trial court granted the motions based upon defendant's expressed lack of confidence in the attorneys and his refusal to cooperate with them in preparation for trial. The trial date which had been set for April 2, 1979, was vacated and re-set for May 14, 1979.

A second set of attorneys and the services of an investigator were obtained by the trial court for the defendant and again the defendant waived his right to a speedy trial. At a defense requested continuance the trial was re-set for September 4, 1979. A conflict of interest required the withdrawal of these attorneys from the defendant's case on July 18, 1979.

The record discloses that the trial court had difficulty in persuading another attorney to accept appointment. However, on August 14, 1979, the attorney who represented the defendant at trial was appointed. On August 19, a hearing was held at which the attorney stressed that he needed additional time for preparation, and requested another continuance. The earliest date that the court could clear its calendar and schedule the trial was in January, which was past the October 26 expiration date of defendant's right to a speedy trial.

■ When the defendant requests and is granted a continuance for a trial, the permissible trial date can be extended for an additional six months. Section 18–1–405(3), C.R.S.1973 (1978 Repl.Vol. 8); Crim.P. 48(b)(3). At this time counsel stated that he had discussed a continuance with the defendant in order that he might adequately prepare for trial and confer with the defendant and that the defendant refused to waive further his right to a speedy trial. The court then questioned the defendant on his decision:

"[THE COURT]: And I think there is an inherent waiver of any right to complain of failure to give you a speedy trial if indeed you do request an extension of time. The dilemma you are caught up in

is whether you want to request an extension or whether you want to force the matter to trial on September 4. And it appears to the Court that that's really the choice you are called upon to make at this time. Do you understand that choice? THE DEFENDANT: Your Honor, I do. I realize the dilemma that we have here. I have existed with this dilemma for practically two years now and I think it's time that it be taken care of. I don't request a continuance of time beyond the last request that I made. Thank you."

At this point counsel requested permission to withdraw. That motion was denied on the basis that "any Counsel who is appointed is going to be exactly in your position except possibly worse in that you have a week or more headstart on whoever the court might appoint from this date on." Subsequent to the denial, counsel requested co-counsel to be appointed and gave the name to the court of a person to whom he had spoken about such an appointment. The court granted the motion, and on August 22 cocounsel was appointed.

On August 27 another hearing was held in which the second appointed co-counsel requested permission to withdraw, noting the short period of time in which he had to prepare. This motion was also denied, with the court stressing that the counsel had already put in two days of work on the case, another counsel would be in a worse position, the investigator who had been appointed early in the case was still working on the case, and that the attorneys had available the work products of the prior attorneys.

The decision as to whether counsel should be permitted to withdraw is within the sound discretion of the trial court. *People v. Schultheis,* 638 P.2d 8 (Colo.1981). In making this decision, "the court must consider ... the possibility that any new counsel will be confronted with the same irreconcilable conflict." *Schultheis, supra.* Here, the trial court correctly recognized that even if it would be able to find another attorney to appoint immediately, given the refusal of the defendant to waive his right to a speedy trial, that such attorney would

be in a worse position than the presently appointed counsel.

Pretrial preparation is a requisite of effective assistance of counsel. In examining whether the constitutional right was violated by the representation following a late appointment of counsel, the court must examine other attendant circumstances. *People v. Meyers,* Colo., 617 P.2d 808 (1980). Examining the totality of circumstances here, we conclude that the trial court did not abuse its discretion in denying the motion to withdraw, nor did it result in ineffective assistance of counsel.

## II.

Defendant also contends that the trial court violated his Fifth Amendment right against self-incrimination when it allowed into evidence a statement regarding the location of the body of one of the victims. We disagree.

An officer testified that he had met with the defendant and his attorney and was advised that the defendant would lead them to the location of the body of one of the victims. The testimony admitted to which defendant objects is as follows:

"Prior to my advisement of Mr. Ashton of his Miranda rights, Mr. Casson, who was his attorney at that time, leaned over and touched Mr. Ashton on his shoulder and said, 'Remember Frank, you're just going to tell them where Jan's at.'"

The defendant argues that this testimony served to inform the jury of the defendant's invocation of his Fifth Amendment privileges against self-incrimination and its attendant inference of guilt. *See People v. Ortega,* 198 Colo. 179, 597 P.2d 1034 (1979). However, even if this statement can be construed as a violation of the defendant's constitutional right, reversible error exists only under circumstances in which the prosecution directs the attention of the jury to the defendant's silence and uses it as a means of inferring guilt. *People v. Key,* 185 Colo. 72, 522 P.2d 719 (1974); *People v. Cornelison,* 44 Colo.App. 283, 616 P.2d 173 (1981). As in *People v. Mack,* 638 P.2d 257 (Colo.1981), here, "the testimony was briefly elicited, was pursued no further

and neither was used to infer some other fact nor was it commented on by the prosecution in summation." Therefore, there is no error requiring reversal.

## III.

The defendant argues that plain error exists in the refusal of the trial court to suppress the rifle found in an inventory search of his truck. We disagree.

The record supports the trial court's conclusion that the officers engaged in a permissible inventory search of the defendant's truck. *See People v. Counterman,* 192 Colo. 152, 556 P.2d 481 (1976). While proceeding with the inventory, the officers discovered a rifle under the seat of the truck. The rifle was not removed. The officers then contacted the district attorney who advised the sheriff either to obtain the defendant's·consent to search or to make an application for a warrant. An officer contacted the defendant and obtained the defendant's consent to search the vehicle. Before giving his consent, the defendant was advised both orally and in writing that he had the right to require the police to obtain a search warrant and a right to refuse to consent to the search and that the evidence acquired could be used against him.

At the onset, we note that it was unnecessary for the officers to obtain the permission of the defendant to search the vehicle in order that the rifle be admitted into evidence. In *People v. Trusty,* 183 Colo. 291, 516 P.2d 423 (1973) the Supreme Court found it was proper for officials to open a trunk to inventory the jack and spare tire, and therefore, anything in plain view in the trunk could be seized as evidence. The rationale of *Trusty* is applicable here. Once the officers are engaged in an inventory search according to the purposes and standards set out in *Counterman, supra,* the search of necessity included looking under the front seat of the truck, which brought into plain view the rifle at issue.

Even if, as argued by defendant, the inventory search was overbroad in its scope, the subsequent consent of the defendant validated the prior discovery of the rifle. The will of the defendant was not overcome by an exploitation of the earlier search. He was shown a list of articles that had already been inventoried which did not include the rifle. He was not brought face to face with the incriminating evidence and he was carefully and accurately advised of his rights. *See State v. Quinn,* 290 Or. 383, 623 P.2d 630 (1981).

Under the circumstances present here, the police did not take advantage of the alleged earlier, primary illegality, and therefore, it could not have a coercive effect on the defendant. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). *See also W. LaFave, 2 Search & Seizure* § 8.2(d) (1978). The record abundantly substantiates the trial court's conclusion that "the consent was given voluntarily by Ashton without any deceit, threat, or coercion." The defendant's consent in itself authorized the recovery of the rifle, and its being admitted into evidence. *See People v. Hayhurst,* 194 Colo. 292, 571 P.2d 721 (1977).

## IV.

The defendant's final contention of error is that the trial court improperly limited cross-examination of a prosecution witness. Again, we disagree.

The witness whose testimony is at issue lived in the same general area as the defendant and the victims and had known both the victims and the defendant prior to the victims' disappearance. The witness was called by the prosecution to establish a possible source for the dynamite used in the "burial." Upon cross-examination, the defendant attempted to use contradictory statements made by the witness to an officer for impeachment purposes.

Prior to the trial, the court had established five collateral areas which were not to be referred to during the trial without first having an in camera hearing because of their prejudicial nature. The inconsistent statements which the defendant desired to introduce into evidence involved one of these collateral areas, *i.e.,* drug dealing.

The scope and limits of cross-examination are within the sound discretion of the trial court, and absent an abuse of

this discretion, a ruling of the trial court in such area will not be disturbed upon appeal. *People v. Crawford,* 191 Colo. 504, 553 P.2d 827 (1976). Here, the trial court correctly determined at an in camera hearing that drug dealing that was the subject of the inconsistent statement was a collateral issue because of its irrelevancy to the crime and that the evidence of it should be omitted from the testimony because of its highly prejudicial character. *See Huggins v. Campbell,* 130 Colo. 183, 274 P.2d 324 (1954). As such, it cannot be used to attack the credibility of the witness on cross-examination. *Montgomery v. People,* 117 Colo. 118, 184 P.2d 480 (1947). Therefore, the trial court did not abuse its discretion in limiting the cross-examination of the witness.

Judgment affirmed.

PIERCE and STERNBERG, JJ., concur.