**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Welborn ALEXANDER, Defendant-Appellant.**

**No. 84SA519.**

Supreme Court of Colorado, En Banc.

Sept. 2, 1986.

Rehearing Denied Sept. 29, 1986.

---

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Cynthia L. Nimerichter, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colo. State Public Defender, Claire Levy, Deputy State Public Defender, Denver, for defendant-appellant.

VOLLACK, Justice.

Defendant-appellant, Welborn Alexander, appeals his conviction by a jury of the charge of first degree sexual assault.[1] The

---

1. Section 18–3–402(1)(a), 8 C.R.S. (1978 & 1985 Supp.), reads as follows:

    **Sexual assault in the first degree.** (1) Any actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits a sexual assault in the first degree if:
    (a) The actor causes submission of the victim through the actual application of physical force or physical violence.

defendant maintains there was insufficient evidence to prove that the crime occurred by application of physical force or violence; the trial court abused its discretion in ruling the victim was competent to testify; the trial court erred in prohibiting cross-examination of the victim on matters which demonstrated a motive to fabricate; and the imposition of a sentence pursuant to section 18–1–105(9)(a)(II), 8 C.R.S. (1985 Supp.), unconstitutionally denied Mr. Alexander due process of law and equal protection under the law.[2]  We affirm.

### I.

While on patrol during the early morning hours of September 21, 1981, an officer of the Colorado Springs police department heard the screams of a woman. The officer approached a parked car from which the sounds came, and the defendant got out of the driver's side of the car. The victim exited the passenger's side of the car and appeared to be in an emotionally distressed state. The victim then attempted to run away from the scene, but was brought back to the patrol car by the officer. Because the victim was a partial deaf mute, the officer took her to the police station where a dispatcher was able to communicate with her through sign language. The defendant was taken to a detoxification center and was later brought to the police station.

At the police station, the victim responded in the affirmative when asked whether she had been sexually assaulted. The victim was then taken to a hospital where tests for evidence of sexual assault were performed. An examination revealed a tampon had been lodged against the victim's cervix, and the presence of semen was detected. The defendant was subsequently charged with first degree sexual assault.

Following a competency hearing, the victim testified through an interpreter using

American sign language. The victim testified that on the evening in question she had been drinking at several bars. She met the defendant upon leaving the third bar she visited, and they continued to another bar where they drank and the victim played pool. During this time they smoked marijuana with a third person outside the bar. When the victim notified the defendant that she wanted to go home and would like a ride, the two and the third party got into defendant's car and drove to another location. The third party drove the vehicle, the victim rode in the passenger's seat, and the defendant rode in the rear seat. Upon stopping, the victim testified that the defendant put his hand around her mouth at which time she screamed. This irritated the defendant and he told her to be quiet. The defendant then pulled the victim into the back seat, put his hand over her mouth again, and repeated the demand for her to be quiet. The victim testified that the defendant shook her and the back of her head hit the car door, but she didn't feel any pain because of her intoxication. The defendant then removed her lower garments and proceeded to engage in sexual intercourse with her despite her protestations. The victim testified that she was scared and thought the defendant would possibly hurt or kill her. At that point the police officer arrived upon the scene and the aforementioned events took place.

### II.

Defendant initially contends that his conviction must be reversed because it was not proven beyond a reasonable doubt that the victim's submission to sexual intercourse was caused by the actual application of physical force or violence. Defendant argues there was no evidence in the record to support a finding that he caused the victim to submit to sexual penetration by "actual application of physical force or physical violence" as set forth in the statute.

First degree sexual assault is a class 3 felony.

**2.** Because the appellant challenges the constitutionality of the statute, this appeal was filed directly in this court pursuant to section 13–4–102(1)(b), 6 C.R.S. (1973 & 1985 Supp.).

We note that challenges to the sufficiency of the evidence to support a criminal conviction require a reviewing court to determine whether the evidence, both direct and circumstantial, when viewed as a whole and in a light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime beyond a reasonable doubt. *Taylor v. People*, 723 P.2d 131 (Colo.1986); *People v. Quick*, 713 P.2d 1282 (Colo.1986); *People v. Gonzales*, 666 P.2d 123 (Colo.1983); *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1973).

The record reflects that the defendant placed his hand over the victim's mouth and told her to be quiet. He then physically pulled her over the front seat of the automobile into the back seat and in the process, the victim was shaken and her head hit against the car door. The victim testified that she objected to the defendant's actions and submitted to the sexual intercourse because of her fear of being hurt or possibly killed by the defendant.

■ Based upon the evidence, we conclude that a jury could find beyond a reasonable doubt that the defendant caused the submission of the victim through the actual application of physical force or violence. Viewing the evidence in a light most favorable to the prosecution, the jury's conclusion is supported by the record. It is the jury which should decide the difficult questions of witness credibility and the weight to be given to conflicting items of evidence. *People v. Brassfield*, 652 P.2d 588, 592 (Colo.1982). There is sufficient evidence in the record to support the jury's conclusion, and such determination will not be disturbed on appeal.

## III.

Defendant next asserts that the trial court abused its discretion in ruling the

victim was competent to testify. Based upon the impairment of her hearing and speaking ability and based upon her responses in the competency hearing, defendant argues that she was not competent to testify, and the trial court abused its discretion in allowing her to testify.

The record reflects that the victim communicated in American sign language, and an interpreter was used. Some of the victim's responses to questions were inappropriate or unresponsive, and other questions needed to be repeated or rephrased. While the victim responded properly to most of the questions, there was some indication in the record that the victim had a learning disability or was mildly retarded. The evidence indicates that the victim had trouble with the abstract concept of truth, and was unable to explain what it meant. The victim did indicate that she knew what the truth is and that she would promise to tell the truth, although she was unable to define it through sign language.

■ We note that a trial court's determination that a witness is competent to testify will not be reversed absent an abuse of discretion. *People v. Estorga*, 200 Colo. 78, 612 P.2d 520 (1980); *People v. Cunningham*, 194 Colo. 198, 570 P.2d 1086 (1977); *Harris v. People*, 174 Colo. 483, 484 P.2d 1223 (1971). Moreover, a trial court's determination of the competency of a witness is aided by the presumption that the witness is competent to testify. *People v. Piro*, 671 P.2d 1341 (Colo.App.1983); § 13–90–101, 6 C.R.S. (1973). If a witness has the capacity to observe, recollect, communicate and understand the oath to tell the truth, she is competent to testify and any mental deficiency is considered only insofar as it affects the weight to be given her testimony. *Howard v. Hester*, 139 Colo. 255, 260, 338 P.2d 106, 108 (1959).

■ The trial court made a pretrial determination of the victim's competency.[3]

---

**3.** The record reflects that the trial court considered five factors in determining whether or not a witness is competent to testify. The trial court stated:

The first one is oath, whether or not they can understand the nature of the oath taking and the consequences if the oath is violated. Second is ability to perceive at the time of the event they are going to testify about. Third is

Based upon the record, we conclude the trial court did not abuse its discretion in finding that the victim was competent to testify. The findings made by the trial court are supported by the evidence, and the determination of competency is addressed to the trial court's discretion. We find no abuse of this discretion and accordingly will not disturb the trial court's determination on appeal.

## IV.

The defendant next argues that the trial court erroneously prohibited cross-examination of the victim on matters that may have demonstrated a motive to fabricate. The defense desired to inquire of the victim about her habit of going to bars alone, whether this made her boyfriend angry, and whether she had stolen drinks and money from other bar patrons in the past. The trial court disallowed this area of inquiry, ruling the prejudicial effect of such evidence would outweigh its probative value under CRE 403.

We note that the scope of cross-examination is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *People v. Crawford*, 191 Colo. 504, 553 P.2d 827 (1976); *People v. Ashton*, 661 P.2d 291 (Colo.App.1982).

■ We conclude the trial court properly excluded such evidence inasmuch as it was irrelevant to the issues under consideration at trial. While great latitude should be allowed when exploring a possible motive to fabricate, *People v. Walker*, 666 P.2d 113 (Colo.1983), in this case the proffered testimony was of limited probative value. We conclude the trial court did not abuse its discretion in prohibiting cross-examination of the victim in these areas.

## V.

Defendant's final argument is that imposition of a sentence pursuant to section 18–1–105(9)(a)(II), 8 C.R.S. (1985 Supp.),[4] unconstitutionally denied him due process of law and equal protection under the law. Defendant maintains that because he was neither given notice that the prosecution would seek a sentence in the aggravated range, nor was the prosecutor held to any burden of proof that defendant was on parole at the time of the commission of this crime, he was deprived of due process and equal protection under the law.

We recently addressed this issue in *People v. Lacey*, 723 P.2d 111 (Colo.1986). In *Lacey*, we held a defendant subject to enhanced sentencing under section 18–1–105(9)(a)(III), 8 C.R.S. (1985 Supp.),[5] has a right to reasonable notice and to have the prosecution prove the status giving rise to enhanced sentencing by a preponderance of the evidence, if the defendant contests such status. We believe the reasoning expressed in *Lacey* applies equally in this case.

■ The only requirements for an enhanced sentencing proceeding under sec-

the ability to record in their memory those events they did in fact perceive. The fourth is an ability to recall from that memory the perceptions, and the fifth is an ability to communicate that recall accurately to the trier of fact.

The trial court made detailed findings as to these factors and concluded that even though the victim had some problems in her ability to communicate, those problems were not sufficient to render her incompetent to testify.

**4.** Section 18–1–105(9)(a)(II), 8 C.R.S. (1985 Supp.), provides:

(9)(a) The presence of any one or more of the following extraordinary aggravating circumstances shall require the court, if it sentences the defendant to incarceration, to sentence

the defendant to a term greater than the maximum in the presumptive range, but not more than twice the maximum term authorized in the presumptive range for the punishment of a felony:

....

(II) The defendant was on parole for another felony at the time of commission of the felony.

At the time of the commission of this offense, defendant was on parole for a previous sexual assault conviction.

**5.** This subsection of the statute requires sentencing in the aggravated range if the defendant was on probation for another felony at the time of the commission of a felony.

tion 18–1–105(9)(a)(II) are also that prior to the sentencing hearing the defendant be given adequate notice of the possibility of an enhanced sentence under the statute, *Lacey*, at 113, and that, if he elects to contest the basis on which an enhanced sentence is sought, the prosecution bears the burden of proving the aggravating factor by a preponderance of the evidence. *Lacey*, at 114. The statutory treatment of defendants under this subsection has a reasonable basis in fact and bears a reasonable relationship to a legitimate governmental interest. *Lacey*, at 116–17 (Quinn, C.J., specially concurring). *See also McMillan v. Pennsylvania*, — U.S. —, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986).

Here, the record reflects that the defendant never contested the fact that he was on parole at the time of the commission of the offense. Moreover, the presentence investigation report, which had been prepared almost one year prior to sentencing, contained an admission by the defendant that he had been on parole. The report recommended sentencing in the aggravated range because the defendant committed the offense while on parole. In addition, defendant's attorney admitted after the trial court denied the motion attacking the constitutionality of this statute that the sentence would have to be in the aggravated range. The presence of these factors leads us to conclude the defendant was afforded reasonable notice that he would be sentenced in the aggravated range. *See People v. Murphy*, 772 P.2d 407 (Colo.1986).

Based upon the reasoning expressed in *Lacey*, we conclude section 18–1–105(9)(a)(II) denies neither defendant's right to due process of law nor his right to equal protection under the law.

Judgment affirmed.