The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 3, 2020

## 2020COA132

**No. 18CA0224, *People v. Ehlebracht* — Criminal Law — Sentencing — Colorado Sex Offender Lifetime Supervision Act of 1998 — Indeterminate Sentence — Probation; Constitutional Law — Fifth Amendment — Double Jeopardy**

A division of the court of appeals decides two issues of first impression. First, distinguishing *Allman v. People*, 2019 CO 78, the division holds that a sentence to prison on one count followed by a sentence to probation under the Sex Offender Lifetime Supervision Act for a sex offense in the same case is legal. Second, applying the Colorado Supreme Court's reasoning in *Waddell v. People*, 2020 CO 39, and *Yeadon v. People*, 2020 CO 38, holds that a sentence that fails to include statutorily required sex offender, special advocate, and crime against a child surcharges is illegal, and therefore a trial court may impose those surcharges after initial sentencing without violating a defendant's right to be free from double jeopardy.

COLORADO COURT OF APPEALS                                    **2020COA132**

Court of Appeals No. 18CA0224
Boulder County District Court No. 16CR2030
Honorable Bruce Langer, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Christopher Daniel Ehlebracht,

Defendant-Appellant.

ORDERS AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE J. JONES
Welling and Gomez, JJ., concur

Announced September 3, 2020

Philip J. Weiser, Attorney General, Jacob R. Lofgren, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Emily C. Hessler, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Christopher Daniel Ehlebracht, pleaded guilty to first degree assault and sexual assault on a child. The district court sentenced him pursuant to a stipulation in the plea agreement to twenty years in prison, to be followed by ten years to life on probation. Ehlebracht challenges the district court's orders designating him a sexually violent predator (SVP) and imposing statutory surcharges after his sentencing. We affirm both the SVP designation and surcharge orders, and we remand the case for further proceedings.

¶ 2     After Ehlebracht appealed, the supreme court decided *Allman v. People*, 2019 CO 78, ¶ 40, holding that, under the general probation statutes, a court may not sentence a defendant to both prison and probation in a multicount case. That development caused us to question whether Ehlebracht's consecutive sentences to both prison and probation are legal. So, nostra sponte, we ordered the parties to file supplemental briefs addressing whether the holding of *Allman* applies to a consecutive probationary sentence, like Ehlebracht's, imposed under section 18-1.3-1004(2)(a), C.R.S. 2019, of the Sex Offender Lifetime Supervision Act (SOLSA). The parties contend, and we agree, that because

1

Ehlebracht's probationary sentence was imposed under SOLSA, a unique sentencing scheme emphasizing sex offender specific objectives, *Allman* doesn't apply, and Ehlebracht's consecutive sentences to prison and probation are authorized by law.

## I.  Background

¶ 3  Twenty-nine-year-old Ehlebracht met the fourteen-year-old victim on a social media application and then took her to his apartment, where he gave her alcohol and sexually assaulted her. The People charged him with one count each of sexual assault on a child with force, enticement of a child, and contributing to the delinquency of a minor.  The People's complaint also charged Ehlebracht with a sentence enhancer as a habitual sexual offender against children.

¶ 4  Ehlebracht pleaded guilty to added counts of first degree assault and sexual assault on a child without the use of force, in return for which the prosecution dismissed the four original charges.  The plea agreement stipulated that Ehlebracht would receive a twenty-year prison sentence, followed by five years of parole, for the assault conviction, and a ten-years-to-life probation sentence for the sexual assault on a child conviction, to be served

consecutively to the prison sentence but concurrently with the parole component of the prison sentence. At the sentencing hearing, the court sentenced Ehlebracht in accordance with the plea agreement and designated him an SVP pursuant to section 18-3-414.5, C.R.S. 2019.

## II. *Allman*'s Prohibition of Consecutive Prison and Probation Sentences Does Not Apply to Indeterminate Probationary Sentences Imposed Under SOLSA

¶ 5    In *Allman*, the supreme court, interpreting the general probation statutes — sections 18-1.3-202 and 18-1.3-203, C.R.S. 2019 — held that "when a court sentences a defendant for multiple offenses in the same case, it may not impose imprisonment for certain offenses and probation for others." *Allman*, ¶ 40. The sentences at issue were consecutive sentences to prison and probation. *Id.* at ¶ 6.

¶ 6    The district court in this case likewise sentenced Ehlebracht to consecutive prison and probation terms. Before we address Ehlebracht's contentions regarding his SVP designation and the imposition of surcharges after his sentencing hearing, we address whether the holding in *Allman* applies to Ehlebracht's consecutive sentences to prison and probation. We do so because if these

3

consecutive sentences are illegal, the district court must, at the very least, resentence Ehlebracht, rendering his challenges to his current sentence moot. (Because we conclude that the sentences are legal, we don't need to determine whether the plea agreement would have to be, or could be, set aside if the agreed upon sentence was illegal.)

### A. Standard of Review

¶ 7 We review de novo whether a trial court can impose a specific sentence because that question turns on statutory interpretation. *Id.* at ¶ 29.

### B. The *Allman* Decision

¶ 8 *Allman* involved an offender who had been convicted of seven counts of identity theft, two counts of forgery, and one count each of attempted identity theft, aggravated motor vehicle theft, and theft from an at-risk elder. For all but one of the forgery counts, the district court imposed an aggregate sentence of fifteen years in prison, followed by five years of parole. As for that one forgery count, the court imposed a sentence of ten years of probation, to be served consecutively to the prison sentence but concurrently with the parole component of the prison sentence. *Id.* at ¶ 1. Allman

challenged the district court's authority to impose both prison and probation sentences in a multicount case.  *Id.* at ¶ 28.

¶ 9     The court began by observing that a trial court exercises discretion in sentencing only to the extent allowed by statute; so the operative question was whether the applicable probation statutes allowed the trial court to impose sentences to both prison and probation.  *Id.* at ¶ 30.  "[L]ooking at the plain language of the probation scheme as a whole and the practical consequences of imposing sentences to both imprisonment and probation," the court concluded that the sentences in that case were not authorized by law.  *Id.* at ¶ 32.  It did so in large part based on the following reading of sections 18-1.3-202 and 18-1.3-203:

- The language of section 18-1.3-203(1) gives the district court "discretion to grant a defendant probation, 'unless, having regard to the nature and circumstances of the offense and to the history and character of the defendant,' it determines that 'imprisonment is the more appropriate sentence for the protection of the public.'" *Allman,* ¶ 33 (quoting § 18-1.3-203(1)).  Thus, "the determination that probation is an appropriate sentence

5

for a defendant necessarily requires a concordant determination that imprisonment is *not* appropriate." *Id.* And because the statute requires the district court to make a choice between prison and probation, the legislature must have intended that the court choose only one or the other. *Id.* at ¶ 34.

- Allowing a court to impose a period of probation to begin upon release from prison would ignore the fact that the legislature determined the proper length of post-incarceration supervision when it crafted the mandatory parole scheme. *Id.* at ¶ 35.

- The legislature limited the confinement period applicable to a probationary sentence to ninety days in jail, or up to two years for work release. § 18-1.3-202(1)(a). This limitation is "clear direction that the legislature never intended for the court to have discretion to impose a period of confinement longer than ninety days (or up to two years with work release) when also sentencing a defendant to probation." *Allman,* ¶ 37.

- Section 18-1.3-202(1)(a) mandates that "[i]f the court chooses to grant the defendant probation, the order placing the defendant on probation *shall* take effect upon entry." (Emphasis added.) The legislature's use of the mandatory term "shall" indicates that it didn't intend for a probationary sentence to be imposed following a term of incarceration. *Allman,* ¶ 38.

¶ 10 In addition to the language of the statutes, the court found further support for its conclusion based on the practical considerations of an offender simultaneously serving parole and probation on release from prison. The court noted that an offender who is released to parole following a prison sentence is supervised by the executive branch. But when the same offender is also sentenced to a consecutive probation sentence, he is simultaneously supervised by the judicial branch. The court found that the legislature couldn't have intended for an offender to be supervised by two different branches of government, with possibly competing terms and conditions, at the same time.

¶ 11 For those reasons, the court concluded that "[b]ecause the probation statute does not grant the courts the power to impose

sentences to both imprisonment and probation in a multi-count case, . . . when a court sentences a defendant for multiple offenses in the same case, it may not impose imprisonment for some offenses and probation for others." *Id.* at ¶¶ 28, 40.

## C. Analysis

¶ 12 The district court sentenced Ehlebracht to probation for his sex offense conviction for an indeterminate term of ten years to life pursuant to section 18-1.3-1004(2)(a) of SOLSA. The sentencing scheme applicable to sex offenders under SOLSA differs from the general sentencing scheme in that, among other things, it emphasizes treatment and supervision for sex offenders. *See* § 18-1.3-1001, C.R.S. 2019 ("The general assembly . . . declares that a program under which sex offenders may receive treatment and supervision for the rest of their lives, if necessary, is necessary for the safety, health, and welfare of the state.").

¶ 13 In their supplemental briefs, the parties assert, and we agree, that because probation imposed under SOLSA differs from the general probation scheme in both its nature and scope, the analysis in *Allman* about whether the general probation statute permits both

prison and probation sentences in a single case doesn't apply to Ehlebracht's sentences.

### 1. General Concerns

¶ 14    We begin by noting that the *Allman* court's analysis was based largely on the language in the general probation statutes — sections 18-1.3-202 and 18-1.3-203. *See Allman*, ¶¶ 33-38. But SOLSA's sentencing scheme, including the provisions addressing probation, is tailored specifically to sex offenders and differs markedly from the general sentencing scheme for non-sex offenders. *See People v. Jenkins*, 2013 COA 76, ¶¶ 14-16. The most notable difference is that sentences under SOLSA are indeterminate, extending up to the offender's natural life. § 18-1.3-1004(1), (2). And, even if an offender is sentenced to incarceration and released on parole, the parole period that attaches is also for an indeterminate period, and the sentence to incarceration is not deemed discharged until the parole board discharges the offender from parole. § 18-1.3-1006(1)(b), C.R.S. 2019.

¶ 15    Further, unlike the general probation statutes, SOLSA requires every sex offender, whether sentenced to probation or released on parole after serving a prison sentence, to participate in

9

Sex Offender Intensive Supervision programs, which provide the highest level of supervision. §§ 18-1.3-1005(2), 18-1.3-1007(2), C.R.S. 2019.

¶ 16    And, unlike section 18-1.3-203(1), the plain language of section 18-1.3-1004(2)(a) doesn't require a finding that prison is not an appropriate sentence.  Rather, consistent with the idea that sex offenders should receive treatment, section 18-1.3-1004(2)(a) requires the court to consider, in addition to the factors listed in section 18-1.3-203, the results of the offense specific sex offender evaluation conducted pursuant to section 16-11.7-104, C.R.S. 2019.[1]  That evaluation is designed to identify treatment options and consider how best to manage or monitor behavior to protect victims or potential victims.  Thus, the court's focus when imposing a probationary sentence under SOLSA is whether the sex offender's treatment needs can best be addressed in the probation setting, not whether incarceration is necessary to protect the public.

---

[1] Though section 18-1.3-1004(1)(2)(a), C.R.S. 2019, includes this cross-reference to section 18-1.3-203, C.R.S. 2019, that cross-reference is a limited one: it incorporates factors the court should consider when deciding whether to order probation under SOLSA. It isn't a wholesale incorporation of the general probation statutes.

¶ 17    Moreover, if *Allman*'s limitation on imposing sentences to both probation and prison were carried over into sex offender sentencing, the court, in certain situations, would be unable to effectuate the legislative intent of SOLSA — namely, providing the most appropriate treatment for sex offenders.  For example, if, as is often the case, an offender is convicted of both a sex offense and non-sex offense in a single case, the court may determine that Sex Offender Intensive Supervision Probation (SOISP) is appropriate to address the offender's treatment needs for the sex offense, but may also determine that a prison sentence is either warranted or required for the non-sex offense.  Under *Allman*, the court would be required to impose either prison or probation on both counts, thus limiting the court's ability to craft a sentence that is appropriate for the non-sex offense and that most effectively serves the offender's treatment needs.  Consequently, applying *Allman*'s case-specific approach would interfere with the offense specific focus that the legislature mandated in SOLSA.

### 2.    Statutory Concerns

¶ 18    We also conclude that the provisions of the general probation statutes that the *Allman* court found evidenced the legislature's

11

intent to prohibit sentences to both prison and probation in a single case don't carry over to SOLSA, for three reasons.

¶ 19 First, unlike a general probationary sentence imposed following a determinate prison sentence, the imposition of an SOISP sentence will not extend the length of post-incarceration supervision. An offender sentenced under SOLSA, regardless of whether the sentence is to prison or to probation, is always subject to potential lifetime supervision. §§ 18-1.3-1004(2)(a), 18-1.3-1005(1)(b). Thus, there is no difference in the length of post-incarceration supervision if a sex offender convicted of both a sex offense and a non-sex offense is sentenced to prison for both offenses, or, instead, is sentenced to parole for the sex offense and prison for the non-sex offense.

¶ 20 Second, the cap on confinement that may be imposed in conjunction with a probationary sentence under section 18-1.3-202(1)(a) isn't present in section 18-1.3-1004(2). Instead, section 18-1.3-1004(2)(b) authorizes the court to order, as a condition of probation, that a sex offender be placed in a residential community corrections program "for a minimum period specified by the court."

¶ 21    Third, although section 18-1.3-202(1)(a) requires that the order to probation take effect when entered, there is no corresponding requirement in section 18-1.3-1004(2)(a).

### 3.    Dual Supervision Concerns

¶ 22    The *Allman* court also expressed concern that prison and probation sentences in the same case would lead to an offender, on release from prison onto mandatory parole, being subject to dual supervision by both parole and probation.  We note, however, that dual supervision scenarios can also arise when a court sentences an offender to probation in one case but makes the sentence consecutive to a prison sentence in a separate case.  And, while dual supervision would obviously arise when, as in this case, an offender is sentenced to prison for a non-sex offense and to SOISP probation for a sex offense, given that the conditions of SOISP are so much more restrictive than traditional probation and parole, we find it unlikely that conflicts in supervision would arise.  In fact, SOLSA requires collaboration between the Department of Corrections (part of the executive branch), Judicial Department, and Parole Board to develop criteria governing when an offender can be released from indeterminate supervision.  § 18-1.3-1009(1),

13

C.R.S. 2019. And any person sentenced to probation under SOLSA must not only comply with the conditions imposed by standard probation but must also follow the more restrictive provisions of SOISP. §§ 18-1.3-1007, 18-1.3-1008(1), C.R.S. 2019.

¶ 23 For these reasons, we conclude that *Allman*'s reasoning for prohibiting both prison and probation sentences in a single case doesn't apply to sentences imposed under SOLSA. Therefore, Ehlebracht's consecutive prison and probation sentences are authorized by statute and not illegal.

### III. SVP Designation

¶ 24 Turning next to Ehlebracht's challenge to the court's order designating him an SVP, he contends that the district court failed to make case specific factual findings to justify its conclusion that he established the relationship with the victim primarily for sexual victimization. More specifically, he asserts that the court's conclusion was based on an inference rather than factual findings and that, to the extent the court relied on his prior convictions to justify its conclusion, its finding that he had two prior convictions for sex offenses involving children was erroneous. We don't see any basis to reverse.

## A. Standard of Review

¶ 25    We review the district court's SVP designation — a mixed question of fact and law — by deferring to the court's factual findings if they have record support and by reviewing de novo the court's legal conclusion that an offender should be designated as an SVP. *Allen v. People*, 2013 CO 44, ¶ 4.

## B. Applicable Law

¶ 26    An SVP is an offender who (1) is eighteen years of age or older as of the date of the offense; (2) has been convicted on or after July 1, 1999, of an enumerated sex offense, including sexual assault on a child in violation of section 18-3-405, C.R.S. 2019; (3) committed the offense against a victim who was a stranger or was a person with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization; and (4) is likely, as determined by a Risk Assessment Screening Instrument, to commit another listed offense under the same or similar circumstances. § 18-3-414.5(1)(a)(I)-(IV); *Allen*, ¶ 6.

¶ 27    The statute requires the probation department, in coordination with an evaluator, to complete the SVP Assessment Screening Instrument (SVPASI) and make a recommendation regarding

whether the defendant meets the SVP criteria. § 18-3-414.5(2). Then, "[b]ased on the results of the assessment, the court shall make specific findings of fact and enter an order concerning whether the defendant is a sexually violent predator." *Id.*

¶ 28 Because Ehlebracht challenges only the court's finding that he established a relationship with the victim for the purpose of sexual victimization, we limit our analysis to whether the district court properly found that he satisfied that requirement.

¶ 29 An offender "'establishe[s] a relationship' under the relationship criterion of the SVP statute where he create[s], start[s], or beg[ins] the relationship primarily for the purpose of sexual victimization." *People v. Gallegos*, 2013 CO 45, ¶ 11. The "use of the word 'primarily' indicates that [the legislature] did not intend for a trial court's SVP designation to hinge on a finding that the offender specifically intended to establish or promote the relationship for the purposes of sexual victimization." *Candelaria v. People*, 2013 CO 47, ¶ 15.

### C. Analysis

¶ 30 The evaluator who conducted the SVPASI concluded that Ehlebracht met the statutory criteria to be designated an SVP.

With respect to the relationship criterion, the evaluator found that Ehlebracht established the relationship with the victim primarily for the purpose of sexual victimization.

¶ 31    At the sentencing hearing, Ehlebracht challenged the evaluator's finding that he established the relationship with the victim primarily for sexual victimization. He argued that the social media application on which he met the victim was just a platform to post anonymously and communicate with people, not a dating application, and that their communication on the application wasn't sexual in nature.

¶ 32    In addressing the SVP finding, the district court said,

> I have reviewed the assessment that was done in this case. Certainly the assessment finds that you meet the criteria for sexually violent predator status. The sticking point I guess in terms of your position has to do with the relationship prong if you will. The assessment deemed that you meet the criteria for establishes a relationship.
>
> In this case the facts are that having two prior convictions for sex offenses involving children you engaged in a relationship with this young woman on this social – what's the word I'm looking for – social media app. And I think it's a very reasonable inference that you did that with – for the purpose of creating a relationship that would lead to sexual victimization.

¶ 33    Ehlebracht argues that the district court failed to make sufficient specific findings of fact to support its conclusion that he established the relationship with the victim primarily for sexual victimization. We disagree.

¶ 34    While the court's findings don't detail the events that gave rise to the offense, the court clearly based its conclusion on the facts of this case when it said, "In this case the facts are that having two prior convictions for sex offenses involving children you engaged in a relationship with this young woman on this . . . social media app." The facts of this case are more fully described in the arrest warrant affidavit and the presentence investigation report. Ehlebracht was twenty-nine years old when he met the fourteen-year-old victim on a social media application. During their online conversation, the victim told Ehlebracht she was fifteen, and he responded, "That's not bad if as long as you don't mind I'm 22." He then convinced her to go with him to his apartment late at night to drink and get high but told her to try and look as old as she could so his roommates wouldn't get suspicious. He picked her up near her home, drove her to his apartment, gave her alcohol, and sexually assaulted her. These facts amply support the court's finding that Ehlebracht

18

established the relationship with the victim primarily for the purpose of sexual victimization. *See id.* at ¶ 19.

¶ 35 To the extent Ehlebracht takes issue with the court's description of his prior convictions as both being sex offenses that involved children, we agree that the court incorrectly characterized those offenses because only one of his prior convictions was for sexual assault on a child. But in addition to listing a 2010 felony conviction for attempted sexual assault on a child, the presentence investigation report also listed two misdemeanor convictions with underlying factual bases involving Ehlebracht having sex with a minor he met on MySpace (a social media site). Thus, since all of Ehlebracht's prior convictions involved him having sex with minors, we conclude that the court's technically erroneous description of Ehlebracht's prior convictions doesn't undermine its conclusion that he established the relationship with the victim primarily for sexual victimization.

¶ 36 Lastly, we reject Ehlebracht's contention that the district court erred by "infer[ring]" that he created the relationship for the purpose of sexual victimization without basing its finding on specific facts of this case. Rarely will an offender admit that he

established or promoted a relationship primarily for sexual victimization. In this case, viewing the court's statement in context, we conclude that the court's use of the word "inference" merely conveyed its conclusion that Ehlebracht established the relationship with the victim primarily for sexual victimization. *See* Merriam-Webster Dictionary, https://perma.cc/X3M3-NUSQ (defining "inference" as "a conclusion or opinion that is formed because of known facts or evidence"). Certainly one reason a twenty-nine-year-old man would ask a fifteen-year-old girl he met online to come to his apartment to drink alcohol and get high would be to sexually victimize her.

¶ 37    In sum, we won't disturb the court's SVP determination.

IV.    Late Imposed Surcharges Do Not Violate Double Jeopardy

¶ 38    Ehlebracht also contends that the district court violated his right to be free from double jeopardy by imposing the sex offender, special advocate, and crime against a child surcharges after his sentencing hearing. Again, we disagree.

A.    Standard of Review and Applicable Law

¶ 39    Whether the district court violated Ehlebracht's right to be free from double jeopardy hinges on the legality of the sentences

imposed in open court. *Waddell v. People*, 2020 CO 39, ¶ 10. We review de novo whether the sentences imposed at the sentencing hearing are authorized by law. *See Veith v. People*, 2017 CO 19, ¶ 12.

¶ 40  Under some circumstances, increasing a defendant's punishment after a lawful sentence has been imposed and the defendant begins serving it "violates the double jeopardy protection against multiple punishments for the same offense." *Romero v. People*, 179 P.3d 984, 989 (Colo. 2007). The protection against double jeopardy, however, doesn't preclude the correction of a sentence that wasn't authorized by law when it was imposed. *Yeadon v. People*, 2020 CO 38, ¶ 9.

¶ 41  A sentence is illegal, or not authorized by law, when it is inconsistent with the statutory scheme created by the legislature. *People v. Rockwell*, 125 P.3d 410, 414 (Colo. 2005).

### B.  Analysis

¶ 42  When the parties submitted their initial briefs in this case, divisions of this court were split on the question whether a particular surcharge — the drug offender surcharge — was mandatory, and whether the district court could legally impose it

after failing to impose it at the sentencing hearing. But the supreme court, in *Waddell* and *Yeadon*, subsequently resolved that dispute. In each case, the court held that, because the drug offender surcharge is statutorily required, the original sentence without the surcharge was illegal and the imposition of such surcharge after sentencing didn't violate the offender's right to be free from double jeopardy. *Waddell*, ¶ 20; *Yeadon*, ¶ 13.

¶ 43    Ehlebracht challenges the court's imposition of sex offender, crimes against a child, and special advocate surcharges after the sentencing hearing. While those particular surcharges weren't at issue in *Waddell* or *Yeadon*, they are subject to the reasoning of those cases. Accordingly, whether the imposition of those surcharges after the sentencing hearing violated Ehlebracht's double jeopardy rights turns on whether the sentence imposed without those surcharges was illegal. *See Yeadon*, ¶ 13.

¶ 44    First, we assume, for purposes of our analysis, that those surcharges are punitive, and thus part of Ehlebracht's criminal sentence.

¶ 45    Turning next to the language of the sex offender and crime against a child statutes, both provide that each person convicted of

22

one of the enumerated offenses "*shall be required* to pay a surcharge." §§ 18-21-103(1), 18-24-102(1), C.R.S. 2019 (emphasis added). As for the special advocate surcharge statute, it provides that "a surcharge of one thousand three hundred dollars *shall be levied* on each criminal action resulting in a conviction" that, as relevant here, was based on a charge of sexual assault on a child. § 24-4.2-104(1)(a)(II)(A), C.R.S. 2019 (emphasis added).

¶ 46 The use of the phrases "shall be required to pay" and "shall be levied" in those statutes indicates that these surcharges are mandatory in all cases where a defendant is convicted of one of the enumerated crimes. *See Waddell*, ¶¶ 16, 22, 25; *Yeadon*, ¶ 11; *see also People v. Hyde*, 2017 CO 24, ¶ 28 ("The legislature's use of the word 'shall' in a statute generally indicates its intent for the term to be mandatory."). Thus, because Ehlebracht's sentence at the hearing didn't include those surcharges, it was illegal when first imposed. *See Waddell*, ¶¶ 20, 27; *Yeadon*, ¶ 16. Therefore, the sentence was subject to correction at any time under Crim. P. 35(a), and the court's subsequent addition of those surcharges didn't violate Ehlebracht's double jeopardy rights. *See Waddell*, ¶¶ 20, 27; *see also People v. Smith*, 121 P.3d 243, 251 (Colo. App. 2005)

23

(correcting an illegal sentence doesn't violate a defendant's right against double jeopardy).

¶ 47    But that isn't the end of the matter.  The statutory provisions imposing each of these surcharges also contains language allowing the court to waive the surcharges if it finds that the offender is indigent or financially unable to pay all or a part of the surcharge. §§ 18-21-103(4); 18-24-103(3); 24-4.2-104(1)(c), C.R.S. 2019. Because the district court imposed the surcharges on Ehlebracht without giving him an opportunity to prove that he falls within one or more of the exemptions, we remand this case to the district court to afford Ehlebracht an opportunity to prove that he is entitled to a waiver.  *See Yeadon,* ¶ 15.

## V.    Conclusion

¶ 48    Ehlebracht's consecutive prison and probation sentences are legal, and the orders designating Ehlebracht an SVP and assessing the statutory surcharges are affirmed.  The case is remanded to the district court with instructions to provide Ehlebracht with the opportunity to prove that he is entitled to a waiver of one or more of the surcharges.

JUDGE WELLING and JUDGE GOMEZ concur.