24CA0637 Peo v Trujillo 06-18-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0637
Mesa County District Court No. 22CR936
Honorable Valerie J. Robison, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Andrew David Trujillo,

Defendant-Appellant.

---

JUDGMENT AFFIRMED, ORDER REVERSED,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE MEIRINK
Pawar and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 18, 2026

---

Philip J. Weiser, Attorney General, Sonia Raichur Russo, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Cynthia A. Harvey, Alternate Defense Counsel, Aurora, Colorado, for
Defendant-Appellant

¶ 1     Defendant, Andrew David Trujillo, appeals the trial court's judgment of conviction entered on a jury verdict finding him guilty of sexual assault on an at-risk individual and the court's order designating him a sexually violent predator (SVP).  We affirm the conviction but reverse the SVP designation and remand the case back to the trial court with directions.

## I.     Background

¶ 2     The victim, M.S., has cerebral palsy and an intellectual disability.  She lives with her parents, and while she can perform basic tasks like bathing and dressing herself, she can't drive, cook, do laundry, or count money.

¶ 3     At the time of the events at issue here, M.S. was nineteen years old.  She was at the grocery store with her mother when Trujillo approached and asked her mother if he could take M.S. to dinner or a movie.  M.S.'s mother told Trujillo that he would need to meet M.S.'s father first.  M.S.'s mother gave M.S. permission to give Trujillo her phone number, and she did.

¶ 4     The same day, Trujillo texted M.S., called her, and then texted again, ultimately asking if she wanted to go to dinner.  M.S. told Trujillo that he would need to meet her father first.  Trujillo and

M.S. then exchanged messages on Snapchat[1] and talked on the phone.

¶ 5     The next day, Trujillo went to M.S.'s house.  M.S.'s father was at work, and her mother was asleep on the couch and did not know Trujillo was there.  After leaving the house for a brief time, Trujillo invited M.S. to go for a drive, telling her that he was outside her house and that she should meet him outside.  M.S. didn't tell her mother that she was leaving the house but called her father and told him she was going to take a walk.

¶ 6     Trujillo drove M.S. to a parking lot by a nearby river.  Trujillo held M.S.'s head down and made her "suck his dick."  Trujillo helped M.S. take off her clothing.  He then grabbed M.S. by the arms and made her get on top of him and choked her.  M.S. testified that Trujillo was wearing a condom and his penis "went inside" her vagina.  M.S. testified that she said no to Trujillo several times.  M.S. got dressed, and Trujillo drove her home.

---

[1] Snapchat is a messaging application through which individuals can send pictures, videos, or text.  *See* Snap Inc., *What is Snapchat?*, https://perma.cc/TN8B-ETPC.  These messages "automatically delete" after they are opened if not saved by the individual receiving the messages.  Snap Inc., *When does Snapchat delete Snaps and Chats?*, https://perma.cc/Z3A3-4HJ5.

¶ 7    Later that day, M.S. told her mother that she had sex but then said that she had been raped.  After M.S. described what Trujillo did, her mother called 911.  Deputy Lee Pratt responded, spoke to M.S. and her mother, and collected information from M.S.'s phone.

¶ 8    Trujillo was charged with one count of sexual assault on an at-risk person, one count of the lesser included offense of sexual assault, and two habitual criminal sentence enhancers.  Before trial, Trujillo challenged M.S.'s competency to testify at trial.  The trial court held a hearing at which M.S., her father, and Deputy Pratt testified.  The court determined that M.S. was competent to testify at trial, and she did.

¶ 9    The jury found Trujillo guilty as charged, and the court merged the convictions for the greater and lesser included sexual assault offenses.  The court sentenced Trujillo to seventy-two years to life in the custody of the Department of Corrections and designated him an SVP.

¶ 10    Trujillo appeals, challenging the trial court's pretrial competency determination and his SVP designation.  We disagree with Trujillo's first contention but agree with his second.

## II.    Competency

### A.    Governing Legal Standards

¶ 11    Witnesses "who are of unsound mind" at the time they appear to testify are deemed incompetent and may not testify. § 13-90-106(1)(a), C.R.S. 2025. A witness is competent if they have "the capacity to observe, recollect, communicate, and understand the oath to tell the truth." *People v. Alexander*, 724 P.2d 1304, 1307 (Colo. 1986). If the witness is competent, any mental deficiency goes to the weight of the testimony, not its admissibility. *Id.*

¶ 12    The trial court has wide latitude to determine a witness's competency. *People v. Alley*, 232 P.3d 272, 275 (Colo. App. 2010) (citing *People v. Galloway*, 677 P.2d 1380, 1381 (Colo. App. 1983)). We will reverse a competency determination only for an abuse of discretion, which happens if the court's ruling is manifestly arbitrary, unreasonable, or unfair. *Alexander*, 724 P.2d at 1307.

### B.    Trujillo's Competency Challenge

¶ 13    Trujillo argues that M.S. lacked the capacity to observe, recollect, communicate, and understand the oath to tell the truth. Specifically, Trujillo argues that M.S. struggled with the concepts of

4

a truth and a lie and made false statements during her interview with Investigator Lissah Norcross.

¶ 14 Based on our review of the competency hearing, we conclude that the court's determination that M.S. was competent was within the wide latitude it had to make that determination.

¶ 15 It is true that M.S. wasn't able to articulate, in abstract terms, the meaning of the words, "fact," "fiction," "truth," and "lie" or explain the general difference between those words. But she demonstrated a clear functional understanding of these words and the differences between them by identifying what was true and what was false when presented with specific examples. For example, the prosecutor held up markers and asked M.S. if it would be true or false to say she was holding up a book. M.S. stated it would be false. This was just one of many similar questions and answers wherein M.S. demonstrated a correct functional understanding of truth and lies.

¶ 16 M.S. also testified, "[Y]ou always have to tell the truth." And instead of guessing when she didn't know the answer to questions, M.S. responded, "I don't know."

¶ 17     Thus, the above testimony indicated that M.S. understood the functional difference between truth and lies, understood that it was important to tell the truth, and was able to tell the truth under oath even when she did not know the answers to questions.

¶ 18     Moreover, testimony from the competency hearing supports the court's conclusion that M.S. was able to observe, recollect, and communicate.  M.S. correctly testified to her birthday, the street she lived on, her favorite movie, her age, and what she had for dinner the night before the competency hearing.  *See People v. Vialpando,* 804 P.2d 219, 224 (Colo. App. 1990) (concluding that the trial court didn't abuse its discretion when the child witness promised to tell the truth and knew her grade in school, the defendant's first name, the difference between the truth and a lie, and the consequences of telling one or the other, and she also knew that it was "Bronco" day).  During the competency hearing, M.S. was able to recollect and communicate details of the assault and, more generally, of her life.  Likewise, both Deputy Pratt and M.S.'s father testified that M.S. could recollect information.

¶ 19     Trujillo points out that M.S.'s interviews with Deputy Pratt and Investigator Norcross were inconsistent with her testimony and

that M.S. couldn't remember details like Trujillo's name, giving Trujillo her phone number, or using Snapchat. Nor could she recall whether she sent Trujillo photos of herself, whether she told Trujillo that she liked him, and whether Trujillo's clothes were on or off during the alleged sexual assault. But any inconsistency or contradiction isn't a matter of witness competency; it's a matter of witness credibility, which is a determination that is left to the jury. *People v. Norwood*, 547 P.2d 273, 279 (Colo. App. 1975); *Butler v. People*, 2019 CO 87, ¶ 20 ("We must leave the determination of the credibility of witnesses to the jury."). We therefore conclude that these inconsistencies that Trujillo relies on were irrelevant to M.S.'s competency.

¶ 20 Finally, we are unpersuaded by Trujillo's reliance on *Medina v. Diuglielmo*, 373 F. Supp. 2d 526, 545 (E.D. Pa. 2005), *rev'd*, 461 F.3d 417 (3d Cir. 2006). Addressing an ineffective assistance claim, the *Medina* court held that trial counsel was ineffective for failing to challenge the competency of a twelve-year-old witness who demonstrated "ambiguous knowledge of the difference between a truth and a lie." *Id.* at 544-45, 547-49. But *Medina* applied a different competency standard (Pennsylvania's) to a situation in

which there was no actual competency inquiry or determination. *See id.* at 540-42. We therefore find it of little use when applying Colorado's competency standard to the comprehensive testimony about M.S.'s competency here.

¶ 21    In sum, we conclude that there was strong evidence of M.S.'s ability to tell the truth; functionally differentiate between truth and lies; and observe, recollect, and communicate. We therefore perceive no abuse of discretion in the trial court's ruling that she was competent to testify.

### III. SVP Designation

¶ 22    Trujillo contends that the trial court erred by finding that he met the "stranger" relationship criteria under section 18-3-414.5(1)(a)(III), C.R.S. 2025, and designating him an SVP on that basis. We agree with Trujillo that the court's factual findings cannot support its legal determination that Trujillo was a stranger for purposes of the SVP designation.

¶ 23    We review the court's SVP designation as a mixed question of fact and law. *People v. Ehlebracht*, 2020 COA 132, ¶ 25. We defer to the court's factual findings if they are supported by the record,

8

and we review de novo the court's legal conclusion designating the defendant an SVP. *Id.*

¶ 24  An individual is designated an SVP if the offender (1) was eighteen years old or older at the time of the offense, (2) was convicted of an enumerated offense, (3) committed the offense against a stranger or "a person with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization," and (4) is likely to recidivate. § 18-3-414.5(1)(a)(I)-(IV). As the Colorado Supreme Court has explained, for an offender to be a stranger for purposes of an SVP designation, either the victim or the offender must be unknown to the other "at the time of the offense." *People v. Hunter*, 2013 CO 48, ¶ 1.

¶ 25  There was no evidence that could have supported a conclusion that either Trujillo did not know M.S. or that M.S. did not know him at the time of the offense. While the interactions between M.S. and Trujillo were brief before the sexual assault, they knew each other at the time of the offense. Trujillo and M.S. met the day before the assault and exchanged phone numbers. M.S. and Trujillo exchanged text messages, sent each other Snapchats, and talked on the phone. Trujillo sent pictures of himself to M.S. And M.S. had

Trujillo's contact information saved in her phone and provided it to Deputy Pratt. Additionally, M.S. spent time with Trujillo in her bedroom before agreeing to go for a drive with him. She also got in his car when he told her to. M.S. knew the identity of her assailant at the time of the assault — indeed, she identified him to police immediately thereafter.

¶ 26    The trial court found that Trujillo qualified as a stranger for SVP purposes because Trujillo, "in his version of the facts, described the victim as a complete stranger." To the extent that this was a factual finding that Trujillo described M.S. as a complete stranger *at the time of the offense*, it is unsupported by the record. It is true that in Trujillo's description of the assault in his sex-offense-specific mental health evaluation prior to sentencing, he described M.S. as "a complete stranger." But Trujillo was referring to when he first met M.S. at the grocery store the day before the assault, not when the assault occurred.

¶ 27    Aside from this unsupported "complete stranger" determination, the court made no specific factual findings supporting its conclusion that either Trujillo or M.S. were strangers to the other. *See People v. Buerge*, 240 P.3d 363, 363, 369 (Colo.

10

App. 2009) ("The [SVP] statute requires the trial court to 'make specific findings of fact,' based on the results of the [SVP] risk assessment, and determine whether the defendant is a[n SVP]." (quoting § 18-3-414.5(2))). We therefore must conclude that the trial court erred by ruling that Trujillo met the stranger criterion and designating him an SVP on that basis.

¶ 28     Anticipating the possible infirmity of the trial court's stranger criterion findings, the Attorney General urges us to affirm Trujillo's SVP designation on the alternative grounds that Trujillo met the relationship requirement by establishing a relationship with M.S. primarily for the purpose of sexual victimization. We decline to affirm on those grounds because the court didn't consider the issue or make findings that would support them. The court noted that the assessment didn't include findings about the "established" or "promoted" relationship criteria, and it didn't make its own findings on the matter.

¶ 29     Accordingly, we remand the case for the court to make factual findings on whether Trujillo meets the "established" or "promoted" relationship criterion to be designated an SVP. *See People v. Gallegos*, 2013 CO 45, ¶ 18 ("As an appellate court, we are not in

the best position for original fact-finding." (quoting *People v. Rodriguez*, 786 P.2d 1079, 1082 (Colo. 1989))).

## IV.   Disposition

¶ 30    We affirm the judgment of conviction. We reverse the SVP designation based on the "stranger" criterion and remand the case for the trial court to make specific findings on whether Trujillo established or promoted a relationship primarily for the purpose of sexual victimization under section 18-3-414.5(1)(a)(III).

JUDGE PAWAR and JUDGE SULLIVAN concur.