488 P.3d 1099
In Re The PEOPLE of the State of Colorado, Plaintiff
v.Michael Anthony MANAOIS, Defendant.
Supreme Court Case No. 20SA375 Supreme Court of Colorado.
June 14, 2021
Attorneys for Plaintiff: Beth McCann, District Attorney, Second Judicial District, Richard F. Lee, Deputy District Attorney, Denver, Colorado
Attorneys for Defendant: Wolf Law, LLC, Jeffrey A. Wolf, Colleen Kelley Cassandra Monahan, Denver, Colorado
En Banc
JUSTICE SAMOUR delivered the Opinion of the Court. ¶1 Sex offenses are different. Our General Assembly has historically acknowledged as much, handling sex offenses differently from other offenses for more than half a century. But exactly how different are sex offenses from other offenses? Today we are called upon to explore this question, as we determine whether a particular sentencing restriction governing felony offenses applies to sex offenses.
¶2 Just last term, we decided in Allman v. People that a district court lacks authority under our general sentencing statutes to sentence a defendant to prison for one offense and to probation for another in a multi-count case. 2019 CO 78, ¶ 28, 451 P.3d 826, 833. But Allman received consecutive prison-probation sentences for non-sex offenses (forgery, theft, and related offenses), while the defendant in this case, Michael Anthony Manaois, received consecutive prison-probation sentences that included a sentence to Sex Offender Intensive Supervision Probation ("SOISP") for a "sex offense" under the Sex Offender Lifetime Supervision Act ("SOLSA"). So, does Allman's sentencing restriction apply in a case where, as here, the defendant receives a prison sentence for a non-sex offense and a consecutive SOISP sentence for a sex offense? ¶3 After revisiting Allman (including the general sentencing statutory provisions to which its holding is largely tethered), examining the General Assembly's longstanding treatment of sex offenses, studying the significant differences between SOLSA and the general sentencing statutes, and considering the court of appeals' recent decision in People v. Ehlebracht, 2020 COA 132, 480 P.3d 727, we answer no. We agree with Ehlebracht: Although SOLSA expressly and impliedly incorporates certain elements of the general sentencing statutes, it is nonetheless an intricate and stand-alone sentencing scheme—one that was enacted to address sex-offense-specific challenges that were not implicated in Allman. Ehlebracht, ¶ 2, 480 P.3d at 730.
¶4 SOLSA is fundamentally different from the general sentencing statutes to which the Allman sentencing restriction is anchored. Of particular relevance here, while the general sentencing statutes reflect the legislature's disapproval of consecutive prison-probation sentences, SOLSA, by contrast, reflects the legislature's approval of such sentencing in cases including a sentence for a non-sex offense and a sentence for a sex offense.
¶5 Therefore, we hold that Allman's sentencing prohibition, while alive and well, does not apply in cases where a defendant receives a prison sentence for a non-sex offense and a consecutive SOISP sentence for a sex offense. And while we recognize the practical consequences of dual parole-probation supervision—which partially motivated the holding in Allman—they don't alter the analysis here because they cannot take precedence over the legislature's intent in SOLSA.1 ¶6 In this case, the district court vacated Manaois's guilty pleas, sentences, and judgment of conviction after the court of appeals mistakenly concluded that his consecutive sentences to prison and SOISP were illegal under Allman. Relying on Ehlebracht, the People invoked our original jurisdiction pursuant to C.A.R. 21, and we issued a rule to show cause. Because the district court erred, albeit at the direction of the court of appeals, we now make the rule absolute and remand with instructions to reinstate Manaois's guilty pleas, sentences, and judgment of conviction.
I. Facts and Procedural History
¶7 Manaois kidnapped his ex-girlfriend, took her to a residence, and sexually assaulted her at knifepoint. After the victim managed to escape, she ran to a nearby convenience store wearing nothing but a torn nightgown to ask for help. Upon responding, officers noticed that she had fresh bruises, scrapes on her knees and elbows, and a black eye. Based on her report and their observations of her injuries, the officers went looking for Manaois. When they tracked him down, they took him into custody. In one of his pockets, they found a knife that matched the one the victim recalled having been used during the attack.
¶8 The People subsequently charged Manaois with second degree kidnapping (a class 2 felony non-sex offense) and sexual assault (a class 3 felony sex offense governed by SOLSA). As part of the parties' plea agreement, Manaois pled guilty to two lesser charges: menacing (a class 5 felony non-sex offense) and sexual assault (a class 4 felony sex offense governed by SOLSA). In exchange, the People dismissed the original charges and recommended a prison sentence of two years for menacing, to be followed by an indeterminate SOISP sentence with a minimum term of at least six years for sexual assault. The district court accepted Manaois's guilty pleas and sentenced him in accordance with the parties' agreement.2 ¶9 Manaois completed his two-year prison sentence and then started serving his indeterminate SOISP sentence. Thereafter, his probation officer asked the court to revoke probation on two separate occasions. The first time, Manaois admitted that he had violated his probation, and the district court revoked and reinstated indeterminate SOISP. The second time, Manaois filed a motion claiming that his consecutive sentences to prison and SOISP were illegal. He thus asked the court to "lop" off the SOISP portion of his punishment or, alternatively, to vacate his guilty pleas and sentences altogether. After the court denied the motion, Manaois admitted to violating his SOISP, and the court resentenced him to prison for an indeterminate period with a minimum term of at least six years. Manaois appealed to the court of appeals.
¶10 While Manaois's appeal was pending, our court announced Allman, a case involving multiple felony convictions for forgery, theft, and related offenses. As pertinent here, Allman held that a district court lacks authority under our general sentencing statutes to sentence a defendant in a multi-count case to prison for one offense and to probation for another. ¶ 40, 451 P.3d at 835. Several months later, a division of the court of appeals unanimously decided in an unpublished opinion that Manaois's sentences were illegal under Allman. People v. Manaois, No. 17CA0514, ¶ 2, 2020 WL 591627 (Feb. 6, 2020). The division reasoned that there was "no difference" between the prison-probation sentences declared illegal in Allman and the prison-SOISP sentences imposed on Manaois. Id. at ¶ 14. Therefore, the division reversed the district court's order denying Manaois's postconviction motion and remanded with instructions to vacate his guilty pleas, sentences, and judgment of conviction. Id. at ¶ 24.
¶11 On remand, the district court did as the division instructed. And, once Manaois's guilty pleas, sentences, and judgment of conviction had been vacated, the People requested and received permission to reinstate the original charges. Manaois then demanded a preliminary hearing. But before the preliminary hearing could be held, a different division of the court of appeals issued its published decision in Ehlebracht, which prompted the People to change horses midstream.
¶12 Much like this case, Ehlebracht involved a prison sentence for a non-sex offense followed by an indeterminate SOISP sentence for a sex offense. Though Ehlebracht's sentencing challenge on appeal was limited to his designation as a sexually violent predator, the division sua sponte questioned the legality of his prison-probation sentences under Allman. Ehlebracht, ¶ 2, 480 P.3d at 730. The division thus ordered the parties to submit supplemental briefing on whether the rule of Allman applied. Id. Both parties subsequently asserted, and the division ultimately determined, "that because Ehlebracht's probationary sentence was imposed under SOLSA, a unique sentencing scheme emphasizing sex offender specific objectives, Allman [didn't] apply, and Ehlebracht's consecutive sentences to prison and probation [were] authorized by law."3 Id. ¶13 Based primarily on Ehlebracht, the People filed a motion to recall the mandate of the court of appeals in this case. They argued that Ehlebracht constituted a sea change in the law and that denial of their recall motion would result in manifest injustice. But the court of appeals summarily denied the motion.
¶14 The People then sought our intervention through this proceeding. Because we chose to exercise our original jurisdiction under C.A.R. 21, we issued a rule to show cause. We discuss next why exercise of our original jurisdiction is appropriate in this case.
II. Original Jurisdiction ¶15 Whether to exercise our original jurisdiction under C.A.R. 21 is a matter wholly within our discretion. C.A.R. 21(a)(1). In exercising that discretion, however, we recognize that C.A.R. 21 is narrow in scope—it provides "an extraordinary remedy that is limited in both purpose and availability." People v. Lucy, 2020 CO 68, ¶ 11, 467 P.3d 332, 335 (quoting People v. Rosas, 2020 CO 22, ¶ 19, 459 P.3d 540, 545 ). Thus, in the past, we have exercised our original jurisdiction in limited circumstances, such as "when an appellate remedy would be inadequate, when a party may otherwise suffer irreparable harm, or when a petition raises issues of significant public importance that we have not yet considered." Id. (quoting Rosas, ¶ 19, 459 P.3d at 545 ). ¶16 The People contend that this case warrants exercise of our original jurisdiction both because they have no other adequate remedy and because their petition raises issues of significant public importance that we have never considered and that are likely to recur. We agree on both scores.
¶17 First, should this case proceed to trial and give rise to a second appeal, it will be too late to determine whether Manaois's original sentences were legal. It follows that a second direct appeal is not a suitable avenue for relief. Nor is there an alternate remedial route available to the People. The court of appeals declined to recall its mandate in this case after Ehlebracht was decided. And, now that this case is on remand, the People cannot seek assistance from the district court because that court is bound by the court of appeals' ruling that Manaois's sentences are illegal under Allman.
¶18 Second, the People's petition presents a novel question of significant public importance: Does the sentencing restriction in Allman apply in a case where the defendant receives a prison sentence for a non-sex offense and a consecutive SOISP sentence for a sex offense? Different divisions of the court of appeals have provided different answers. And the question will undoubtedly come up again—in point of fact, today we resolve essentially the same question in one additional case.4 Under these circumstances, waiting to act would foster uncertainty and do a disservice to our district courts and the court of appeals, not to mention Coloradans in general.
¶19 Because we agree with the People that exercise of our original jurisdiction is appropriate, we proceed to analyze the merits of the parties' contentions. We stray from that path briefly now, though, to set forth the controlling standard of review.
III. Standard of Review ¶20 Whether a district court has the authority to impose a particular sentence is a question of statutory interpretation. Allman, ¶ 29, 451 P.3d at 833. We review questions of statutory interpretation de novo. Id. IV. Analysis
¶21 We begin by paying a call on Allman and inspecting its foundation: (1) the general sentencing statutes, and (2) the practical consequences of prison-probation sentencing. We then pivot to ponder our legislature's approach to sex-offense sentencing, which differs markedly from its approach to sentencing for other offenses. Our research reveals that the legislature has singularly handled sex-offense sentencing for more than half a century—in fact, in the wake of SOLSA's enactment in 1998, its approach to such sentencing has intensified and become broader in scope and more sophisticated. ¶22 We proceed to determine, as did the division in Ehlebracht, that there are significant differences between the general sentencing statutes and SOLSA's sentencing scheme. Critically, while the general sentencing statutes reflect the legislature's disapproval of consecutive prison-probation sentences, SOLSA, by contrast, reflects the legislature's approval of such sentencing in cases including a sentence for a non-sex offense and a sentence for a sex offense. We thus hold that Allman's sentencing prohibition, while alive and well, does not apply in cases where a defendant receives a prison sentence for a non-sex offense and a consecutive SOISP sentence for a sex offense. We end by concluding that the practical consequences of dual parole-probation supervision—which partially motivated the holding in Allman —don't alter the analysis here because they cannot take precedence over the legislature's intent in SOLSA.
A. Circling Back to Allman
¶23 Allman maintained that the district court had erred by imposing consecutive sentences to prison and probation for multiple forgery, theft, and related offenses. Allman, ¶¶ 1, 28, 451 P.3d at 828, 832-33. In agreeing with him, we first acknowledged that sentencing courts lack inherent authority to sentence and must thus exercise their sentencing discretion "only to the extent permitted by statute." Id. at ¶ 30, 451 P.3d at 833 (quoting Vensor v. People, 151 P.3d 1274, 1275 (Colo. 2007) ). "Prescribing punishments is the prerogative of the legislature," we cautioned. Id. Consequently, we characterized our task as discerning whether the general sentencing statutes authorize a court to impose consecutive sentences to prison and probation in a single case. Id. Because the general sentencing statutes are silent on this point, we sought to determine the legislature's intent by: (1) looking for clues in the language of those statutes and (2) contemplating, in accordance with section 2-4-203, C.R.S. (2020) ("Ambiguous statutes—aids in construction"), the practical consequences of permitting consecutive sentences to prison and probation. Allman, ¶¶ 31-32, 451 P.3d at 833.
¶24 Turning first to the plain language of the general sentencing statutes, we discerned no legislative intent to allow a probation sentence following completion of a prison sentence. Id. at ¶ 33, 451 P.3d at 833.5 We noted that, under section 18-1.3-203(1), C.R.S. (2020), a determination that probation is appropriate requires a concomitant determination that prison is not appropriate. Allman, ¶ 33, 451 P.3d at 833. Section 18-1.3-203(1), we said, affords a district court discretion to impose a probation sentence "unless ... imprisonment is the more appropriate sentence for the protection of the public." Allman, ¶ 33, 451 P.3d at 833 (quoting § 18-1.3-203(1) ). Thus, we reasoned, either prison is necessary to protect the public, in which case a probation sentence is not permitted, or prison is not necessary to protect the public, in which case a probation sentence is permitted. Id. at ¶ 34, 451 P.3d at 833.
¶25 Shifting our attention to other provisions in the general sentencing statutes, we observed that permitting prison-probation sentences would "in effect increase the time of post-incarceration supervision," thereby flouting the legislature's determination regarding the proper length of time for such supervision when it crafted the applicable periods of parole. Id. at ¶ 35, 451 P.3d at 834. We didn't think it plausible that the legislature would have intended to allow sentencing courts to extend the parole period it had formulated for each felony level. Id.
¶26 The People pushed back, insisting that the legislatively mandated parole period would not be impinged by the imposition of a prison sentence followed by a probation sentence because the parole period would apply to one offense while the probation period would apply to a separate offense. Id. at ¶ 36, 451 P.3d at 834. We found this position untenable, however, because parole is case-specific (not offense-specific) and thus a defendant convicted of multiple offenses in a single case is subject to only one period of parole—the longest period of parole applicable. Id.
¶27 Continuing our perusal of the general sentencing statutes, we pointed out that the legislature has placed limitations on the length of confinement that a court may order as a condition of probation, and that if a court is allowed to impose a prison sentence followed by a probation sentence, those boundaries would essentially be rendered meaningless. Id. at ¶ 37, 451 P.3d at 834. Such sentencing, we explained, would all but sidestep the legislature's restrictions on the imposition of confinement as a condition of probation. Id.
¶28 We also mentioned that we understood section 18-1.3-202(1)(a), C.R.S. (2020), in the general sentencing statutes as providing further evidence that the legislature did not intend to permit a sentence to prison for one offense followed by a sentence to probation for another. Allman, ¶ 38, 451 P.3d at 834. Section 18-1.3-202(1)(a) states that if a sentencing court "chooses to grant the defendant probation, the order placing the defendant on probation shall take effect upon entry." We construed this statutory requirement as forbidding the type of delay inherent in having a probation sentence begin after completion of a prison sentence. Allman, ¶ 38, 451 P.3d at 834.
¶29 Finally, turning to the practical consequences of approving Allman's prison-probation sentences, we expressed concern about the simultaneous supervision of a defendant by two different branches of government, possibly with competing terms and conditions. Id. at ¶ 39, 451 P.3d at 834-35. As a defendant commenced serving his probation sentence for one conviction, he would also commence serving his period of parole for a separate conviction. See id. Therefore, he'd be contemporaneously supervised by the judicial branch on probation and by the executive branch on parole—an outcome we didn't think the legislature could have intended. Id.
¶30 The collective force of these considerations created a strong pull for our judicial compass in Allman. Heeding the magnetic north established by the legislature, we concluded that the general sentencing statutes do not vest district courts with authority "to impose sentences to both imprisonment and probation in a multi-count case." Id. at ¶ 28, 451 P.3d at 833. Hence, we held that Allman's sentences were illegal. Id.
¶31 Of course, in ascertaining whether the prison-probation sentencing prohibition in Allman applies here, we must be mindful that, unlike Allman, this case includes a SOLSA sentence for a sex offense. That distinction is critical because the considerations we found so persuasive in Allman are not squarely applicable where a defendant receives a prison sentence for a non-sex offense followed by an SOISP sentence for a sex offense.
¶32 But to understand why a SOLSA-calibrated lodestar points us in a different direction, we must first appreciate the material differences between the general sentencing statutes (on which Allman largely rests) and SOLSA. So, before considering how our analysis in Allman intersects with the specifics of SOLSA, we pause to catalogue the many intricacies and idiosyncrasies of the General Assembly's time-honored handling of sex-offense sentencing. To do this, we first delve into SOLSA's ancestor and then proceed to scrutinize the legislature's renewed commitment to sex-offense-specific sentencing in SOLSA itself. Armed with knowledge of the core differences between the general sentencing statutes and SOLSA, we return to the cardinal question before us and resolve whether the Allman sentencing restriction applies to Manaois's sentences. B. The Legislature Has Historically Taken a Unique Approach to Sex-Offense Sentencing
1. Dating Back to 1968, the Legislature Has Recognized That Sex-Offense Sentencing Warrants Special Attention (A Look at SOLSA's Legislative Ancestor)
¶33 In 1968, three decades before it breathed life into SOLSA, the legislature enacted the Colorado Sex Offenders Act of 1968 ("the 1968 Act"). §§ 18-1.3-901 to - 916, C.R.S. (2020). The 1968 Act remains applicable to any "sex offense"—as the term is defined in section 18-1.3-903(5), C.R.S. (2020), of that Act—committed before November 1, 1998, § 18-1.3-902, C.R.S. (2020). Under the 1968 Act, district courts are empowered to sentence a defendant to prison "for an indeterminate term having a minimum of one day and a maximum of his or her natural life."6 § 18-1.3-904, C.R.S. (2020). Although the 1968 Act does not include a legislative declaration, its contents make plain that the legislature was concerned with the heightened risk that the most dangerous sex offenders pose to public safety, and relatedly, the feasibility of adequate supervision and the potential benefit of psychiatric treatment.7 ¶34 Before imposing an indeterminate sentence pursuant to the 1968 Act, the court must commit the defendant for a psychiatric examination, and the report from such examination must contain opinions as to whether: (1) "the defendant, if at large, constitutes a threat of bodily harm to members of the public"; (2) the defendant is "mentally deficient"; (3) psychiatric treatment could benefit the defendant; and (4) the probation department could adequately supervise the defendant. § 18-1.3-908(2), C.R.S. (2020). In addition to the psychiatric examination report, the court must order a presentence investigation report by the probation department. § 18-1.3-909, C.R.S. (2020). Once in possession of the two reports, the court must hold a hearing to "receive evidence bearing on the issue of whether the defendant, if at large, constitutes a threat of bodily harm to members of the public." § 18-1.3-911(3), C.R.S. (2020). And, after the hearing, "[i]f the court finds beyond a reasonable doubt that the defendant, if at large, constitutes a threat of bodily harm to members of the public," it must impose an indeterminate one-day-to-life prison sentence. § 18-1.3-912(2), C.R.S. (2020). These sentencing components reflect that, as early as 1968, the General Assembly perceived a need to handle sex offenses distinctly from other offenses.
2. In SOLSA, the Legislature Has Continued Its Unique Approach to Sex-Offense Sentencing—In Fact, Its Approach Has Intensified and Become Broader in Scope and More Sophisticated ¶35 From the adoption of the 1968 Act, we fast forward thirty years to 1998. The legislature doubled down on its sex-offense-specific methodology by animating SOLSA, the Colorado Sex Offender Lifetime Supervision Act of 1998. §§ 18-1.3-1001 to - 1012, C.R.S. (2020). SOLSA occupies part 10 of the sentencing code, which is located in article 1.3 of title 18. (The 1968 Act resides in part 9, next door to SOLSA). Tellingly, like the 1968 Act, SOLSA is separate and apart from the general sentencing statutory provisions addressing probation (part 2) and imprisonment (part 4)—i.e., the general sentencing statutory provisions in which the Allman sentencing restriction is predominantly embedded.8 ¶36 SOLSA applies first and foremost to any "sex offense"—as that term is defined in section 18-1.3-1003(5), C.R.S. (2020)—committed on or after November 1, 1998, § 18-1.3-1012, C.R.S. (2020).9 As we discuss later, however, SOLSA also encompasses a second category of offenses, which we coin "sex-related offenses." ¶37 The legislative declaration in SOLSA conveys that the General Assembly remained concerned about the risk that sex offenders pose to public safety.10 § 18-1.3-1001, C.R.S. (2020). In fact, SOLSA's legislative declaration reveals that the General Assembly intensified its sex-offense-specific efforts, broadening the scope of its approach to all sex offenses and adopting a more sophisticated strategy. See id. Thus, whereas the 1968 Act offers a single tool to avert the danger that the highest-risk sex offenders pose to the public—discretionary indeterminate one-day-to-life prison sentences—SOLSA sets forth a multifaceted mechanism to protect the public from the danger that all sex offenders present.
¶38 Almost as if rethinking the 1968 Act's one-trick-pony framework, the legislature in SOLSA acknowledged right out of the gate that our society can't keep all sex offenders in prison indeterminately because doing so "imposes an unacceptably high cost in both state dollars and loss of human potential." Id. Equipped with exponentially more research than it had at its disposal thirty years earlier, the legislature found in 1998 "that some sex offenders respond well to treatment and can function as safe, responsible, and contributing members of society, so long as they receive treatment and supervision." Id. (emphasis added). In stark contrast to the 1968 Act, then, SOLSA's centerpieces are treatment and supervision. See id.
¶39 Even when a sex offender receives a prison sentence, treatment and post-release supervision are still required under SOLSA. See id. In other words, treatment and supervision are prioritized both when a sex offender is sentenced to probation and when a sex offender is sentenced to prison. As the legislature explained, if "the majority of persons who commit sex offenses" do not receive appropriate treatment and supervision, they "will continue to present a danger to the public." Id. In line with the premium it placed on treatment and supervision, the legislature declared in SOLSA that "a program" under which sex offender probationers and parolees may receive treatment and supervision, including potentially for the rest of their lives, "is necessary for the safety, health, and welfare of the state." Id.
¶40 As it relates to probation, the legislature directed the judicial department to establish "intensive supervision probation," or SOISP. § 18-1.3-1007(1)(a), C.R.S. (2020). Any sex offender sentenced to probation must—in addition to satisfying any conditions imposed pursuant to section 18-1.3-204, C.R.S. (2020), which is part of the general sentencing statutes—participate in SOISP, complete sex-offender-specific treatment (as opposed to psychiatric treatment under the 1968 Act), and "receive the highest level of supervision that is provided to probationers" in our state. § 18-1.3-1007(2) ; see also § 18-1.3-1004(2) - (3), C.R.S. (2020) (incorporating by reference § 16-11.7-105, C.R.S. (2020)); § 18-1.3-1008(1), C.R.S. (2020). Consequently, the program may include, but is not limited to, "severely restricted activities," daily contact with the probation officer, monitored curfew, home visits, employment visits, and restitution. § 18-1.3-1007(2). SOISP must be designed so as to "minimize the risk to the public to the greatest extent possible." Id. ¶41 The legislature didn't stop there. True to its belief that some sex offenders may require lifetime supervision and treatment, it subjected all sex offender probationers to mandatory indeterminate sentences. § 18-1.3-1004. It pronounced that if a court sentences a sex offender to probation, the sentence must be "for an indeterminate period of at least ten years for a class 4 felony or twenty years for a class 2 or 3 felony and a maximum of the sex offender's natural life." § 18-1.3-1004(2)(a). Hence, not only must a sex offender placed on probation participate in SOISP, he must also receive an indeterminate sentence. ¶42 SOLSA's indeterminate sentencing design isn't limited to probation. Instead, it is paralleled on the imprisonment side of the sentencing ledger.11 To the extent the court sentences a sex offender to imprisonment, SOLSA requires that it be "for an indeterminate term of at least the minimum of the presumptive range ... and a maximum of the sex offender's natural life." § 18-1.3-1004(1)(a). In some circumstances, such as when the sex offense in question constitutes a crime of violence, the minimum term of incarceration is longer. See § 18-1.3-1004(1)(b) (requiring a sentence of "an indeterminate term of at least the midpoint in the presumptive range for the level of offense committed"). ¶43 Relatedly, and in harmony with the legislature's philosophy that treatment is necessary during imprisonment to minimize the risk to the community when a sex offender reenters society, "the parole board shall determine whether the sex offender has successfully progressed in treatment and would not pose an undue threat to the community if released under appropriate treatment and monitoring requirements." § 18-1.3-1006(1)(a), C.R.S. (2020). This means that a sex offender must successfully progress in treatment while in prison if he wishes to be released on parole. And, in deciding whether to release a sex offender on parole, the parole board must consider "whether there is a strong and reasonable probability" that he will not violate the law after his release from prison. Id. ¶44 Should a sex offender be released on parole, he must be appropriately supervised, potentially for the rest of his life. His "sentence to incarceration shall continue and shall not be deemed discharged until such time as the parole board may discharge [him] from parole." § 18-1.3-1006(1)(b). Differently put, the period of parole supervision is indeterminate. Id. And, like probation, it has a minimum term of at least ten years for a class 4 felony and twenty years for a class 2 or 3 felony. Id. Further, as a condition of release on parole, a sex offender must participate in the parole equivalent of the judicial department's SOISP program—"the intensive supervision parole program" ("SOIS-Parole")—which the legislature charged the Department of Corrections with creating and administering. § 18-1.3-1006(2)(a). ¶45 But how does a court determine whether to choose indeterminate SOISP or indeterminate prison when sentencing a sex offender? Under SOLSA, the court must order, as part of the presentence investigation by the probation department, that a sex offender "submit to an evaluation for treatment, an evaluation for risk, procedures required for monitoring of behavior to protect victims and potential victims, and an identification" procedure pursuant to section 16-11.7-103(4), C.R.S. (2020). § 16-11.7-104(1), C.R.S. (2020). The court must consider the contents of the sex-offense-specific evaluation, as well as the factors set forth in section 18-1.3-203 ("Criteria for granting probation") of the general sentencing statutes, to assess whether indeterminate SOISP or indeterminate incarceration is appropriate.12 § 18-1.3-1004(2)(a). Therefore, determining the most appropriate treatment and supervision for a sex offender necessarily includes an assessment of the most suitable setting for such treatment and supervision—whether probation or prison. ¶46 Notably, SOLSA isn't limited to sex offenses. It also applies to a second category of offenses—"sex-related offenses"; while the legislature excluded these offenses from the definition of "sex offense" under section 18-1.3-1003(5), it explicitly kept them within SOLSA's ambit and made them subject to certain provisions, including those addressing the treatment and level of supervision required on probation and parole.13 See § 18-1.3-1007(1)(a) (dealing with probation and listing, among other sex-related offenses: any felony offense involving "unlawful sexual behavior" or "an underlying factual basis" of such behavior and which resulted in conviction, guilty plea, or nolo contendere plea on or after July 1, 2001; and attempt, conspiracy, and solicitation to commit a sex offense when such "attempt, conspiracy, or solicitation would constitute a class 5 felony"); § 18-1.3-1005(1), C.R.S. (2020) (dealing with parole and setting forth some, but not all, of the sex-related offenses listed in its probation counterpart in section 18-1.3-1007(1)(a) ). By deleting them from the definition of "sex offense" but then adding express references to them in other sections of SOLSA, the legislature shielded "sex-related offenses" from the mandatory indeterminate sentencing statute—which applies only to sex offenses—without banishing them from SOLSA's domain.14 ¶47 In the end, our review of SOLSA leads us to conclude that it was never intended to merely supplement the general sentencing statutes. Rather, although it expressly and impliedly incorporates certain elements of the general sentencing statutes, it is nonetheless an entirely freestanding sentencing framework designed to address sex-offense-specific objectives.15 The differences that flow from those distinct objectives undergird SOLSA's unique architecture.
¶48 Given all this, there can be little doubt that SOLSA marches to the beat of its own drum. But does that affect the applicability of Allman's sentencing prohibition in cases that include a prison sentence for a non-sex offense and a consecutive SOISP sentence for a sex offense? We analyze that question next.
C. There Are Significant Differences Between SOLSA and the General Sentencing Statutes—Of Most Relevance Here, SOLSA Evinces the Legislature's Intent to Permit the Prison-Probation Sentences Under Challenge
¶49 Now that we have carefully examined SOLSA's progenitor and SOLSA itself, we are ready to consider whether the sentencing restriction in Allman applies in a multi-count case such as this one. We conclude that it does not.
¶50 Recall that the sentencing prohibition in Allman is principally rooted in the general sentencing statutes. See ¶¶ 33-38, 451 P.3d at 833-34. As we have just illustrated, however, SOLSA is a stand-alone sentencing scheme aimed at achieving specific objectives related to sex offenses. Customized to such offenses, SOLSA is remarkably different from the general sentencing statutes to which Allman is anchored.
¶51 First, the general sentencing statutes don't require anyone sentenced to probation or released on parole to participate in the most intensive form of supervision available in our state—whether SOISP or SOIS-Parole. See §§ 18-1.3-201 to - 212, - 401 to - 409, C.R.S. (2020). In fact, our general sentencing statutes don't even permit SOISP or SOIS-Parole. See §§ 18-1.3-201 to - 212, - 401 to - 409, C.R.S. (2020). Nor do our general sentencing statutes include sex-offense-specific treatment as a possible condition of probation. §§ 18-1.3-201 to - 212, C.R.S. (2020). And our general sentencing statutes don't have a provision conditioning parole eligibility on successful progression in sex-offense-specific treatment. § 18-1.3-401, C.R.S. (2020). On the other hand, under SOLSA: (a) all sex offenders sentenced to probation must participate in SOISP and complete sex-offense-specific treatment, §§ 18-1.3-1004(2)(a), - 1007(1)(a), - 1008(1) ; (b) all sex offenders must progress in sex-offense-specific treatment to be eligible for parole, § 18-1.3-1006(1)(a) ; and (c) all sex offenders who are paroled must participate in SOIS-Parole and complete sex-offense-specific treatment, §§ 18-1.3-1005(1), (1.5), - 1006(2)(a). ¶52 Second, whereas SOLSA requires indeterminate probation sentences or indeterminate prison sentences for all sex offenses, the general sentencing statutes don't include any indeterminate sentencing provisions (mandatory or otherwise) for any offense. Compare § 18-1.3-1004 ("Indeterminate sentence"), with § 18-1.3-202(1)(a) (stating that "the court may grant the defendant probation" for any period "it deems best"), and § 18-1.3-401(1)(a)(V.5)(A) (applying to offenses committed on or after July 1, 2020, and dividing felonies into six classes, which "are distinguished from one another" by the "presumptive ranges" of determinate prison terms set forth therein).16 SOLSA further differs from the general sentencing statutes in that it requires indeterminate parole "for any sex offender." Compare § 18-1.3-1006(1)(b), with § 18-1.3-401(1)(a)(V.5)(A). ¶53 Third, while we expressed worry in Allman that allowing a probation sentence to begin after completion of a prison sentence would impermissibly extend post-incarceration supervision beyond statutorily limited parole periods, ¶ 35, 451 P.3d at 834, SOLSA renders that concern moot by calling for indeterminate probation and parole as to all sex offenses, see §§ 18-1.3-1004(2)(a), - 1006(1)(b). A sex offender sentenced under SOLSA always faces potential lifetime supervision (on either probation or parole), even when he is also sentenced for a non-sex offense in the same case. See §§ 18-1.3-1004(2)(a), - 1006(1)(b). So, when a case includes sentences for a non-sex offense and a sex offense, it makes no difference, for purposes of the length of post-incarceration supervision, whether they are prison-SOISP sentences or prison sentences. See Ehlebracht, ¶ 19, 480 P.3d at 733. Regardless of which of these two sentencing options the court chooses, an indeterminate sentence (to probation or prison) is required, which means that the maximum length of post-incarceration supervision is the same—an indeterminate term up to the sex offender's life. ¶54 Fourth, unlike the general sentencing statutes, SOLSA doesn't require the court to find, as a condition precedent to placing a sex offender on probation, that prison isn't necessary to protect the public. Compare § 18-1.3-203(1) (the general sentencing statutes), with § 18-1.3-1004(2)(a) (SOLSA). This condition precedent was one of the roadblocks that kept us from upholding the prison-probation sentences imposed in Allman. ¶ 34, 451 P.3d at 833. SOLSA, however, authorizes the court to sentence a sex offender to SOISP based on consideration of the sex-offense-specific evaluation contained in the presentence investigation report, see § 16-11.7-104(1), and the factors delineated in the general sentencing statutes, see §§ 18-1.3-203, - 1004(2)(a).17 As the division reasoned in Ehlebracht, under SOLSA, the relevant inquiry is whether "the sex offender's treatment needs can best be addressed in the probation setting, not whether incarceration is necessary to protect the public." ¶ 16, 480 P.3d at 733. ¶55 Fifth, SOLSA doesn't include a "cap on confinement" that may be imposed as a condition of a probationary sentence—yet another distinguishing feature from the general sentencing statutes. Ehlebracht, ¶ 20, 480 P.3d at 733 (discussing section 18-1.3-202(1)(a) of the general sentencing statutes). The cap in section 18-1.3-202(1)(a) was another barrier in Allman as we assessed whether a probation sentence could lawfully follow completion of a prison sentence. ¶ 37, 451 P.3d at 834. Instead, as a condition of SOISP, SOLSA permits placement of the sex offender in a residential community corrections program for whatever "minimum period" the court chooses. § 18-1.3-1004(2)(b). ¶56 Sixth, the general sentencing statutes expressly provide that an order placing a defendant on probation must take effect upon entry, § 18-1.3-202(1)(a), which signaled to us in Allman that the legislature didn't intend to allow a probation sentence to be held in abeyance pending discharge of a prison sentence, ¶ 38, 451 P.3d at 834. But SOLSA has no such provision. See §§ 18-1.3-1004(2)(a), - 1007(1)(a). And there is no basis to believe that the legislature intended to require that an SOISP sentence for a sex offense commence immediately upon imposition. ¶57 Last, and most compelling for our purposes, the general sentencing statutes are silent as to "the propriety of sentencing a defendant to both imprisonment and probation in a multi-count case," which is why in Allman we had to discern the legislature's intent by drawing reasonable inferences from the plain language of the general sentencing statutes and weighing the practical consequences of dual probation-parole supervision. ¶ 32, 451 P.3d at 833. In jarring contrast, in SOLSA, the legislature specifically anticipated that a defendant sentenced for a sex offense could additionally be sentenced for another offense (including a non-sex offense) arising out of the same incident. § 18-1.3-1004(5)(a). Manaois, of course, is such a defendant. As relevant here, SOLSA places one—and only one—restriction on the sentences that may be issued in that scenario: Section 18-1.3-1004(5)(a) provides that if the court sentences a defendant to prison for the sex offense, it must order that sentence and the sentence for the other offense (whether to prison or probation) to be "served consecutively rather than concurrently." The legislature included no other sentencing restrictions in section 18-1.3-1004(5)(a). It certainly didn't prohibit courts from ordering a sentence to prison for a non-sex offense and a consecutive sentence to SOISP for a sex offense. And we've previously made clear that "we will not construe a statute in a manner that assumes the General Assembly made an omission; rather, the General Assembly's failure to include particular language is a statement of legislative intent." Specialty Rests. Corp. v. Nelson , 231 P.3d 393, 397 (Colo. 2010).
¶58 Had the legislature intended to bar the type of consecutive prison-probation sentences Manaois received in this case, it presumably would have said as much. That the legislature chose not to do so speaks volumes about its intent, and we are required to honor that intent. See Granite State Ins. Co. v. Ken Caryl Ranch Master Ass'n, 183 P.3d 563, 567 (Colo. 2008) (explaining that the legislature is presumed to have "knowledge of the legal import of the words it use[s]").
¶59 Applying Allman's prison-probation sentencing prohibition to Manaois's sentences would be tantamount to adding language to section 18-1.3-1004(5)(a). This we cannot do. Dep't of Revenue v. Agilent Techs., Inc., 2019 CO 41, ¶ 16, 441 P.3d 1012, 1016 ("[W]e must respect the legislature's choice of language, and we will not add words to a statute or subtract words from it."). ¶60 As well, extending Allman's prison-probation sentencing restriction here would thwart part of the legislative intent in SOLSA—namely to provide sex offenders the most appropriate treatment (including in the most suitable setting). See Ehlebracht, ¶ 17, 480 P.3d at 733. As the division in Ehlebracht commented: [I]f, as is often the case, an offender is convicted of both a sex offense and non-sex offense in a single case, the court may determine that [SOISP] is appropriate to address the offender's treatment needs for the sex offense, but may also determine that a prison sentence is either warranted or required for the non-sex offense. Under Allman, the court would be required to impose either prison or probation on both counts, thus limiting the court's ability to craft a sentence that is appropriate for the non-sex offense and that most effectively serves the offender's treatment needs. Consequently, applying Allman's case-specific approach would interfere with the offense[-]specific focus that the legislature mandated in SOLSA. Id. (emphasis added). When a sex-offense-specific evaluation under section 16-11.7-103(4) recommends SOISP for a sex offense, should an indeterminate prison sentence with a potential maximum term of life nonetheless be imposed merely because a prison sentence (even one as short as four years) is required or warranted for a non-sex offense in the same case? In our view, in devising SOLSA, the legislature answered no. SOLSA leaves no doubt: Sex offenses are different, and courts are to take a bespoke approach when sentencing sex offenders. ¶61 In short, there are substantial differences between SOLSA and the general sentencing statutes. We deem particularly persuasive the fact that, unlike the general sentencing statutes, SOLSA reflects the legislature's intent to allow consecutive prison-probation sentences in cases involving a sentence for a non-sex offense and a sentence for a sex offense. Hence, we cannot simply superimpose Allman's sentencing proscription onto SOLSA in a case like this one; doing so would do violence to the legislature's intent. ¶62 As a postscript to the foregoing discussion, we wish to make a collateral point clear: We're not suggesting that whenever a sentence is imposed pursuant to SOLSA, the general sentencing statutes become irrelevant. As we explained earlier, SOLSA explicitly and implicitly incorporates certain elements of the general sentencing statutes. For instance, though sex-related offenses fall within the scope of SOLSA, they remain subject to the determinate sentencing design in the general sentencing statutes. See §§ 18-1.3-202(1)(a), - 401(1)(a)(V.5)(A). That's because SOLSA excludes sex-related offenses from its mandatory indeterminate sentencing statute, § 18-1.3-1004, and contains no other provision related to determinate or indeterminate sentencing for such offenses. Likewise, in deciding whether to sentence a sex offender to indeterminate SOISP or indeterminate prison, SOLSA requires the court to consider the factors listed in section 18-1.3-203, one of the general sentencing statutes. § 18-1.3-1004(2)(a). And, in the event the court places a sex offender on probation, SOLSA mandates that he complete SOISP "in addition to any conditions imposed pursuant to section 18-1.3-204" of the general sentencing statutes. § 18-1.3-1008(1). ¶63 Where SOLSA either expressly or impliedly incorporates a provision from the general sentencing statutes, the incorporated provision must obviously be effectuated. See CLPF-Parkridge One, L.P. v. Harwell Invs., Inc., 105 P.3d 658, 660 (Colo. 2005). But, because SOLSA is more specific than the general sentencing statutes, where a provision in the general sentencing statutes seems to conflict with a provision in SOLSA, the former must yield to the latter. People v. Adams, 2016 CO 74, ¶ 16, 384 P.3d 345, 348. Thus, for example, while section 18-1.3-401(1)(a)(V.5)(A) in the general sentencing statutes calls for determinate terms as to all prison sentences, felonies that qualify as sex offenses are subject to indeterminate prison sentences under SOLSA. Indeed, section 18-1.3-401(1)(c) acknowledges that nothing in section 18-1.3-401(1)(a) "shall limit the authority granted in [the 1968 Act and SOLSA] to sentence sex offenders to the department of corrections ... for an indeterminate term." Similarly, and most pertinent here, because SOLSA contains a provision that evinces the legislature's intent to permit consecutive prison-probation sentences in cases involving a sentence for a non-sex offense and a sentence for a sex offense, that provision must take precedence over the provisions in the general sentencing statutes that supported our decision in Allman.
D. The Practical Consequences of Dual Supervision, Which Partially Motivated the Holding In Allman, Don't Alter the Analysis Here
¶64 Though we have now concluded that the legislature intended to permit a prison sentence for a non-sex offense followed by a probation sentence for a sex offense in a multi-count case, our analysis isn't complete just yet. What about the practical consequences of dual parole-probation supervision that flow from imposing "sentences to both imprisonment and probation"? Allman , ¶ 32, 451 P.3d at 833. Our holding in Allman was sustained by two pillars: (1) the reasonable inferences we could draw from the general sentencing statutes; and (2) the undesirable practical consequences of dual supervision that flow from allowing consecutive prison-probation sentences. Id. at ¶¶ 33-39, 451 P.3d at 833-34. We dealt with the former above, and we take up the latter below.
¶65 We observed in Allman that allowing a sentence to prison to be followed by a sentence to probation in the same case would mean that the defendant would be simultaneously supervised by the executive branch on parole and by the judicial branch on probation, possibly under conflicting terms and conditions. Id. at ¶ 39, 451 P.3d at 834. But this side effect of consecutive prison-probation sentencing is of no moment here.
¶66 In Allman, we looked to the practical consequences of prison-probation sentencing as part of our quest to discover the legislature's intent "in the face of statutory silence." Id. at ¶ 31, 451 P.3d at 833 (quoting LaFond v. Sweeney, 2015 CO 3, ¶ 12, 343 P.3d 939, 943 ); see also § 2-4-203(1)(e) (listing "[t]he consequences of a particular construction" as one of the aids of construction the court may use to discern "the intention of the general assembly" when a statute is "ambiguous"). We ultimately decided that our legislature could not have intended the adverse consequences of dual supervision and thus deduced that it must have intended to prohibit a court from sentencing a defendant to prison and probation in a multi-count case. Allman, ¶ 39, 451 P.3d at 834. ¶67 SOLSA, however, is not silent on the imposition of consecutive sentences to prison and probation in cases involving a sentence for a non-sex offense and a sentence for a sex offense. Indeed, we have now determined that SOLSA reflects the legislature's intent to permit a sentence to prison for a non-sex offense followed by a sentence to SOISP for a sex offense. Therefore, we need not resort to the tool of statutory construction on which we leaned in Allman. See § 2-4-203(1)(e).18 ¶68 In sum, we conclude that Allman's sentencing prohibition, while still good law, has no application here. Accordingly, Manaois's consecutive sentences to prison and SOISP were not barred by the rule of Allman.
V. Conclusion
¶69 We hold that Allman's prohibition against consecutive prison-probation sentencing does not apply in a case where, as here, the defendant receives a prison sentence for a non-sex offense and a consecutive SOISP sentence for a sex offense.19 Because, heeding the court of appeals' erroneous instructions, the district court vacated Manaois's guilty pleas, sentences, and judgment of conviction, we make the rule absolute and remand for further proceedings consistent with this opinion. On remand, the district court must reinstate Manaois's guilty pleas, sentences, and judgment of conviction.
CHIEF JUSTICE BOATRIGHT dissents, and JUSTICE HART joins in the dissent.
CHIEF JUSTICE BOATRIGHT, dissenting.
¶70 The fact that a particular sentencing arrangement proves useful does not make that arrangement legal. That summarizes my position. While I agree with the majority that sentences to prison for some offenses and Sex Offender Intensive Supervised Probation ("SOISP") for other offenses in the same case prove useful from a practical—and, frankly, just—perspective, I disagree that the applicable sentencing statutes allow that arrangement. We examined the general probation statutes in Allman v. People, 2019 CO 78, 451 P.3d 826, and held that, "when a court sentences a defendant for multiple offenses in the same case, it may not impose imprisonment for some offenses and probation for others." Id. at ¶ 28, 451 P.3d at 833. In my view, the general probation statutes still apply in sex-offense cases because the sex-offense probation statute modifies and supplements —but does not replace—the general probation statutes.1 Therefore, I would follow Allman in this case and hold that, when a court sentences a defendant for multiple offenses in the same case, it may not impose imprisonment for some offenses and SOISP for others. Here, I would affirm the court of appeals' determination that, because Manaois pled guilty under the terms of a plea agreement that recommended such an illegal "prison-plus-SOISP" sentence, and the trial court imposed that sentence, Manaois's guilty plea is invalid and must be vacated. Accordingly, I respectfully dissent.
I. The General Probation Statutes Still Apply in Sex-Offense Cases
¶71 The courts derive the power to sentence, both to prison and probation entirely from statute. Id. The legislature prescribes punishments and, consequently, "[w]ithout statutory authority to impose probation, the court[s] ha[ve] no inherent powers to impose such a sentence." Id. at ¶ 30, 451 P.3d at 833.
¶72 The applicable sentencing statutes do not explicitly address prison-plus-SOISP sentences, and I am unwilling to presume that they do.2 Therefore, to determine whether courts may impose prison-plus-SOISP sentences, we must determine whether the legislature intended to allow such sentences by looking to the plain language of the probation scheme as a whole and the practical consequences of that arrangement. See id. at ¶ 32, 451 P.3d at 833. ¶73 The general probation statutes provide courts the authority to impose probation, see § 18-1.3-202(1)(a), C.R.S. (2020), except when courts conclude—after considering several enumerated factors—that "imprisonment is the more appropriate sentence for the protection of the public." § 18-1.3-203(1), C.R.S. (2020). The general probation statutes also set out various conditions of probation, itself, such as a prohibition on harassment of victims and witnesses. § 18-1.3-204, C.R.S. (2020).
¶74 The sex-offense probation statute builds on the general probation statutes by explicitly referring to them for authority. The sex-offense probation statute allows courts to sentence sex offenders to an indeterminate period of SOISP after "consideration of ... the factors specified in section 18-1.3-203." § 18-1.3-1004(2)(a), C.R.S. (2020). This means that, before imposing an indeterminate period of SOISP, courts must consider the several enumerated factors in the general probation statutes to determine whether imprisonment is the more appropriate sentence. The general probation statutes do not provide courts the authority to impose probation if these factors point toward imprisonment. The sex-offense probation statute modifies, therefore, only the length of probation which courts may impose by allowing indeterminate periods for sex offenders.3 ¶75 The sex-offense probation statute further builds on the general probation statutes by referring to them for conditions of probation. The sex-offense probation statute requires that courts—"in addition to any conditions imposed pursuant to section 18-1.3-204"—impose participation in the SOISP program on sex offenders they sentence to probation. § 18-1.3-1008(1), C.R.S. (2020) (emphasis added). In my view, the statutory language plainly contemplates that courts will impose conditions of probation on sex offenders under the general probation statutes. I struggle to think of a clearer indication that the sex-offense probation statute does not replace the general probation statutes. The statute supplements, therefore, the conditions of probation imposed under the general probation statutes.
¶76 The fact that the sex-offense probation statute builds on the general probation statutes by explicitly referring to them for authority and conditions of probation leaves me skeptical of the majority's suggestion that the sex-offense probation statute creates a separate and independent probationary authority for sex offenses. See maj. op. ¶ 50 ("SOLSA is a stand-alone sentencing scheme ...."). The majority relies on People v. Ehlebracht, 2020 COA 132, 480 P.3d 727, for support. Maj. op. ¶ 3 ("We agree with Ehlebracht ...."). In Ehlebracht , a division of the court of appeals concluded that, unlike the general probation statutes, the sex-offense probation statute does not require courts to determine whether imprisonment is the more appropriate sentence. ¶ 16, 480 P.3d at 732. The division explained away the explicit reference to the general probation statutes, characterizing it as "a limited one" that "incorporates factors the court should consider when deciding whether to order probation under [the sex-offense probation statute]." Id. at ¶ 16 n.1, 480 P.3d at 732 n.1. The reference, in the division's view, "isn't a wholesale incorporation of the general probation statutes." Id.
¶77 I disagree. How can the sex-offense probation statute not require courts to determine whether imprisonment is the more appropriate sentence when it explicitly refers to the factors that courts must consider to make that determination under the general probation statutes?4 The division even explained that courts must use those same factors when deciding whether to impose SOISP under the sex-offense probation statute—a decision presumably dependent on whether imprisonment is the more appropriate sentence. Id. at ¶ 16, 480 P.3d at 732. As one of those factors demonstrates, by sheer logic, the factors can't be dissociated from their purpose: "The defendant is in need of correctional treatment that can most effectively be provided by a sentence to imprisonment ...." § 18-1.3-203(1)(b) (emphasis added). The sex-offense probation statute, therefore, does require courts to determine whether imprisonment is the more appropriate sentence—by explicit reference to the general probation statutes.
¶78 This, combined with the fact that the sex-offense probation statute supplements conditions of probation imposed under the general probation statute—"in addition to any conditions imposed pursuant to section 18-1.3-204"—leads me to conclude that the sex-offense probation statute belongs to a unified probation scheme. § 18-1.3-1008(1) (emphasis added). The statute does not stand apart, creating a separate and independent probationary authority for sex offenses. The statute modifies and supplements —but does not replace—the general probation statutes. See maj. op. ¶ 62 ("We're not suggesting that whenever a sentence is imposed pursuant to SOLSA, the general sentencing statutes become irrelevant."). The general probation statutes "appl[y] to SOISP sentences except where the language conflicts with more specific provisions contained in the statutes governing SOISP sentences." People v. Trujillo , 261 P.3d 485, 488 (Colo. App. 2010).
¶79 The majority repeatedly acknowledges—as it must—that the sex-offense probation statute builds on the general probation statutes by explicitly referring to them for authority and conditions of probation. But the majority then refuses to draw the logical conclusion, namely that the sex-offense probation statute does not create a separate and independent probationary authority for sex offenses. See maj. op. ¶ 3 ("Although SOLSA expressly and impliedly incorporates certain elements of the general sentencing statutes, it is nonetheless an intricate and stand-alone sentencing scheme ...."); id. at ¶ 47 (same); id. at ¶ 45 ("The court must consider ... the factors set forth in section 18-1.3-203 ... of the general sentencing statutes, to assess whether indeterminate SOISP or indeterminate incarceration is appropriate."); id. at ¶ 54 (same); id. at ¶ 62 (same); id. at ¶ 40 ("Any sex offender sentenced to probation must—in addition to satisfying any conditions imposed pursuant to section 18-1.3-204 ..., which is part of the general sentencing statutes—participate in SOISP ...."); id. at ¶ 62 (same). The majority fails, in my view, to answer one central question: If the sex-offense probation statute is a stand-alone sentencing scheme, why does it need to cross-reference the general probation statutes at all? If the sex-offense probation statute stands alone, then it should be written to stand alone.
II. When a Court Sentences a Defendant for Multiple Offenses in the Same Case, It May Not Impose Imprisonment for Some Offenses and SOISP for Others
¶80 Because the general probation statutes still apply in sex-offense cases, I see no reason why our holding or, at least, our reasoning in Allman should not also apply in sex-offense cases. In Allman, we examined the general probation statutes and concluded that the legislature did not intend to allow courts to sentence defendants to both imprisonment and probation in multi-count cases. ¶ 32, 451 P.3d at 833. Therefore, I conclude here that the legislature did not intend to allow courts to sentence defendants to both imprisonment and SOISP in multi-count cases for substantially the same reasons:
¶81 First, the general probation statutes require a choice between prison and probation. Because the statutes provide courts the authority to impose probation except when imprisonment is more appropriate, "the determination that probation is an appropriate sentence for a defendant necessarily requires a concordant determination that imprisonment is not appropriate."5 Id. at ¶ 33, 451 P.3d at 833. Because SOISP is probation, the general probation statutes require a choice between prison and SOISP. And even if the general probation statutes do not apply in sex-offense cases, the sex-offense probation statute still requires courts to determine whether imprisonment is the more appropriate sentence by explicit reference to the general probation statutes. See § 18-1.3-1004(2)(a). The choice between prison and SOISP applies regardless.
¶82 The majority recognizes that the sex-offense probation statute requires a choice between prison and SOISP. Maj. op. ¶ 45 ("The court must consider ... the factors set forth in section 18-1.3-203 ... of the general sentencing statutes, to assess whether indeterminate SOISP or indeterminate incarceration is appropriate."). But then it says the opposite. Id. at ¶ 54 ("[U]nlike the general sentencing statutes, SOLSA doesn't require the court to find, as a condition precedent to placing a sex offender on probation, that prison isn't necessary to protect the public."). In my view, these are mutually exclusive positions.
¶83 Second, orders placing a defendant on probation must take effect immediately. Indeed, section 18-1.3-202(1)(a), explains that orders placing a defendant on probation "shall take effect upon entry." The use of the mandatory "shall" indicates that "the legislature did not intend for courts to enter an order granting probation to run consecutively to a sentence of imprisonment." Allman, ¶ 38, 451 P.3d at 834. Because SOISP is probation, orders placing a defendant on SOISP must take effect immediately.
¶84 Third, sentences to imprisonment followed by probation conflict with the general probation statutes' limits on the length of confinement which courts may impose as a condition of probation. The statutes grant courts the authority to commit a defendant to jail as a condition of probation, but the aggregate length of such confinement for felonies may not exceed ninety days or two years with work release. See § 18-1.3-202(1)(a) ; § 18-1.3-207(1), C.R.S. (2020); Allman, ¶ 37, 451 P.3d at 834. This constitutes "clear direction that the legislature never intended for the court[s] to have discretion to impose a period of confinement longer than ninety days (or up to two years with work release) when also sentencing a defendant to probation." Allman, ¶ 37, 451 P.3d at 834. Because SOISP is probation, sentences to prison followed by SOISP conflict with the general probation statutes' limits on the length of confinement which courts may impose as a condition of probation.
¶85 Fourth, allowing probation to run concurrently with parole after a defendant's release from prison could lead to conflict between the judicial branch, which manages probation, and the executive branch, which manages parole. A defendant serving both probation and parole would have not only two different supervisors but also commitments to two different branches of government—potentially with different and conflicting terms and conditions. As a practical matter, "[t]he legislature could not have intended for defendants to be simultaneously subject to two separate branches of government during their post-incarceration supervision." Id. at ¶ 39, 451 P.3d at 834-35. Because SOISP is probation, allowing SOISP to run concurrently with parole after a defendant's release from prison could lead to conflict between the judicial branch and the executive branch.
¶86 I find myself unpersuaded by the majority's argument that, because the terms and conditions of SOISP prove much more restrictive than traditional parole, a defendant's dual commitments would probably not conflict. Maj. op. ¶ 67 n.18. True, the terms and conditions of SOISP would probably prove much more restrictive, but that does little to eliminate conflict, even mundane conflict such as overlapping required check-ins, counseling sessions, and support groups.
¶87 I also question the majority's suggestion that section 18-1.3-1009, C.R.S. (2020), demonstrates that the legislature foresaw or even intended dual commitments.6 Maj. op. ¶ 67 n.18 ("SOLSA shows that the legislature anticipated this particular outcome."). That section required the sex offender management board, the department of corrections, the judicial branch, and the parole board to collaborate for the purpose of, "[o]n or before July 1, 1999," establishing "criteria by and the manner in which a sex offender may demonstrate that he or she would not pose an undue threat to the community if released on parole or to a lower level of supervision while on parole or probation or if discharged from parole or probation." § 18-1.3-1009(1)(a). That section also required the same entities to collaborate for the purpose of establishing "methods of determining whether a sex offender has successfully progressed in treatment" and "[s]tandards for community entities that provide supervision and treatment specifically designed for sex offenders who have developmental disabilities." § 18-1.3-1009(1)(b)-(c). Accordingly, I read that section only to require probation and parole to develop uniform standards for evaluating sex offenders' progress in treatment as well as fitness for release from prison to parole, to a lower level of supervision if on probation or parole, or from probation or parole entirely. I do not read that section to require probation and parole to go so far as to collaborate in anticipation of dual commitments.
¶88 Fifth, the discrepancy between the length of post-incarceration probation and mandatory periods of parole suggests that the legislature did not intend to allow sentences to both imprisonment and probation in multi-count cases. The legislature set limits on post-incarceration supervision when it specified mandatory periods of parole for the various degrees of felonies. See § 18-1.3-401, C.R.S. (2020); Allman, ¶ 35, 451 P.3d at 834. When courts impose prison-plus-SOISP sentences for sex offenses, however, they extend the period of post-incarceration supervision beyond those limits because the indeterminate period of SOISP for any sex offense exceeds the determinate periods of parole for non-sex offenses.7 ¶89 This case provides a perfect example. Here, Manaois pled guilty to menacing, a class 5 felony, and sex assault, a class 4 felony. The terms of the plea agreement, which the trial court imposed, recommended two years in prison on the menacing count, followed by an indeterminate period of SOISP on the sex assault count. The legislature, however, specified two years as the mandatory period of parole for class 5 felonies such as menacing. § 18-1.3-401(1)(a)(V)(A) (for felonies committed after July 1, 1993, and before July 1, 2018), (A.1) (for felonies committed after July 1, 2018, and before July 1, 2020), (V.5)(A) (for felonies committed on or after July 1, 2020). Therefore, the trial court extended the period of post-incarceration supervision beyond the two-year limit specified by the legislature when it imposed an indeterminate period of SOISP. ¶90 Finally, the majority's approval of prison-plus-SOISP sentences also erroneously endorses an offense-specific determination of post-incarceration supervision over a case-specific one. We explained in Allman that, when a court sentences a defendant for two or more felonies in a multi-count case, the single, mandatory period of parole depends on the most serious felony of which the defendant stands convicted. ¶ 36, 451 P.3d at 834 (citing § 18-1.3-401(1)(a)(V)(E) ); see also § 18-1.3-401(1)(a)(V.5)(5) (for felonies committed on or after July 1, 2020). Therefore, "the legislature intended the rehabilitative period for a defendant to be case specific, not offense specific." Allman, ¶ 36, 451 P.3d at 834. When courts impose prison-plus-SOISP sentences, however, they make an offense-specific determination of post-incarceration supervision, imposing a period of SOISP for any sex offense and a period of parole for non-sex offenses. In doing so, courts fail to condition post-incarceration supervision on the most serious felony of which the defendant stands convicted. The majority's approval of prison-plus-SOISP sentences, therefore, also constitutes an approval of offense-specific determination of post-incarceration supervision and conflicts with the parole statutes.
¶91 This examination of the probation scheme and practical consequences leads me to the opposite conclusion from the majority, namely that the legislature did not intend to allow prison-plus-SOISP sentences. Therefore, I would hold that, when a court sentences a defendant for multiple offenses in the same case, it may not impose imprisonment for some offenses and SOISP for others.
III. Manaois's Guilty Plea Is Invalid and Must Be Vacated
¶92 In approving prison-plus-SOISP sentences, including the one in Manaois's case, the majority does not reach the question of what to do with Manaois's guilty plea. Because I would hold prison-plus-SOISP sentences illegal, I briefly answer that question.
¶93 Although I appreciate the People's argument that Manaois's guilty plea need not be vacated because the trial court could cure any illegality resulting from Manaois's prison-plus-SOISP sentence by resentencing Manaois to probation on all counts, Chae v. People, 780 P.2d 481 (Colo. 1989), speaks in broad terms applicable here. In Chae, we held that when a defendant accepts a plea agreement that "includes as a material element a recommendation for an illegal sentence" and the trial court imposes that sentence, "the guilty plea is invalid and must be vacated because the basis on which the defendant entered the plea included the impermissible inducement of an illegal sentence." Id. at 486. Here, Manaois accepted a plea agreement that included a recommendation for an illegal prison-plus-SOISP sentence, and the trial court imposed that sentence. Therefore, Chae renders Manaois's guilty plea invalid and requires that we vacate the plea.
¶94 Further, I find Chae's categorical approach necessary to maintain the integrity and fairness of the plea-bargaining process: A plea agreement, to be valid, must be voluntarily, knowingly, and intelligently made. Id. at 485. A plea agreement "induced by misrepresentation, including unfulfilled or unfulfillable promises," cannot qualify as voluntarily and knowingly made. Id. at 485-86. The parties may not bargain for an illegal sentence. In my view, that happened here.
¶95 Therefore, I would affirm the court of appeals' determination that, because Manaois pled guilty under the terms of a plea agreement that recommended an illegal prison-plus-SOISP sentence, and the trial court imposed that sentence, Manaois's guilty plea is invalid and must be vacated.
IV. Conclusion
¶96 In sum, while I agree with the majority that sentences to prison for some offenses and SOISP for other offenses in the same case prove useful from a practical—and, frankly, just—perspective, I disagree that the applicable sentencing statutes allow that arrangement. I would hold that, when a court sentences a defendant for multiple offenses in the same case, it may not impose imprisonment for some offenses and SOISP for others. Here, I would affirm the court of appeals' determination that, because Manaois pled guilty under the terms of a plea agreement that recommended such an illegal prison-plus-SOISP sentence, and the trial court imposed that sentence, Manaois's guilty plea is invalid and must be vacated. Accordingly, I respectfully dissent.
I am authorized to state that JUSTICE HART joins in this dissent.
1 Any statements in this opinion referring either to the legislature's intent to permit consecutive prison-probation sentences or to a court's authority to impose them must be understood as subject to the proviso that such sentences are otherwise authorized by law.
2 By law, the required minimum SOISP sentence on a class 4 felony sex offense is at least ten years. See § 18-1.3-1004(2)(a), C.R.S. (2020). The legality of the minimum term of the SOISP sentence imposed on Manaois is not before us.
3 Given that the supplemental briefing submitted by the parties embraced the same position, before resolving Ehlebracht's appeal, the division filed a motion for prejudgment certiorari in our court, noting that its decision was unlikely to be challenged. Our court denied that motion.
4 See People v. Lowe, 2021 CO 51, ––– P.3d ––––. We also contemporaneously announce three cases that address a question similar to the one presented here: People v. Keen, 2021 CO 50, ––– P.3d ––––, the other lead companion case, People v. Coleman, 2021 CO 52, ––– P.3d ––––, and People v. Rainey, 2021 CO 53, ––– P.3d ––––.
5 Though this part of the analysis in Allman focused on the general probation statutes, it also included the general imprisonment statutes. Allman , ¶¶ 35-36, 451 P.3d at 834. Accordingly, we refer to Allman's reliance on the general sentencing statutes.
6 Proceedings under the 1968 Act must be commenced, upon motion by either party or on the court's own motion, within twenty-one days after conviction of a sex offense, § 18-1.3-906, C.R.S. (2020), and must include an advisement of rights, § 18-1.3-907, C.R.S. (2020).
7 The 1968 Act defines "sex offender" as "a person convicted of a sex offense." § 18-1.3-903(4).
8 Direct sentences to community corrections that have a residential component are deemed to be imprisonment sentences. See Beecroft v. People, 874 P.2d 1041, 1045 (Colo. 1994). A district court's authority to place a defendant in community corrections is governed by the sentencing code's part 3, which is in the same neighborhood as parts 2 and 4 (probation and imprisonment respectively).
9 "Sex offense" includes "attempt, conspiracy, or solicitation to commit any of the offenses" listed under the definition of "sex offense" if such "attempt, conspiracy, or solicitation would constitute a class 2, 3, or 4 felony." § 18-1.3-1003(5)(b).
10 Section 18-1.3-1003(4) defines a "sex offender" as "a person who is convicted of or pleads guilty or nolo contendere to a sex offense."
11 SOLSA is not simply a sex-offense probation act. It is much broader than that—it includes imprisonment provisions as well. Indeed, as this opinion makes clear, SOLSA is a comprehensive sentencing scheme.
12 SOLSA renders some sex offenders ineligible for probation. See § 18-1.3-1004(2)(a).
13 As mentioned, the term "sex-related offenses" is ours; we use it simply as a matter of convenience to refer to offenses that are technically non-sex offenses (because they're not included in the definition of "sex offense") but that nevertheless fall within the confines of SOLSA.
14 Our discussion in this opinion spotlights sex offenses because Manaois's SOISP sentence was for a sex offense. In the companion opinion in Keen, we concentrate on sex-related offenses because Keen's SOISP sentence was for a sex-related offense. Keen , ¶¶ 1-6.
15 Though SOLSA applies to both sex offenses and sex-related offenses, we use the "sex-offense-specific" nomenclature and similar terms throughout this opinion based on the verbiage in SOLSA's legislative declaration. See § 18-1.3-1001 (mentioning only sex offenses). As we explain in Keen, SOLSA's legislative history reveals that, having deleted sex-related offenses from the definition of "sex offense" in one of the final drafts of SOLSA, the legislature never accounted for the change in the legislative declaration. See Keen, ¶ 30 n.6.
16 We are aware that in People v. Jenkins, a division of the court of appeals concluded that, since section 18-1.3-202(1) of the general sentencing statutes authorizes a sentencing court to grant probation for "such period ... as it deems best," the court may impose "an indeterminate term of probation." 2013 COA 76, ¶ 40, 305 P.3d 420, 426. Our court has never addressed this issue, and we don't do so here. Suffice it to say that the legislature did not expressly authorize indeterminate sentencing in section 18-1.3-202(1).
17 We recognize that factor (1)(b) in section 18-1.3-203 directs courts to consider whether prison is the most appropriate sentence for the public's protection given the "need of correctional treatment that can most effectively be provided by a sentence to imprisonment." § 18-1.3-203(1)(b). However, the legislature explicitly made the criteria listed in section 18-1.3-203, including factor (1)(b), "subject to the provisions of ... title 16," including the one governing sex-offense-specific evaluations (section 16-11.7-104(1) ). § 18-1.3-203(1). And the components of a section 16-11.7-104(1) evaluation differ appreciably from the factor (1)(b) inquiry. Given the directive in section 18-1.3-203(1), to the extent that section 16-11.7-104(1) is inconsistent with factor (1)(b), the latter must give way to the former. See § 18-1.3-203(1).
18 The legislature was undoubtedly aware of the possibility of dual supervision, as it required that a prison sentence for a sex offense be served consecutively to any sentence (including a probationary one) for another offense (including a non-sex offense) arising out of the same incident. § 18-1.3-1004(5)(a). Not only are we required to so presume, Anderson v. Longmont Toyota, Inc., 102 P.3d 323, 330 (Colo. 2004) ("When the General Assembly chooses to legislate, it is presumed to be aware of its own enactments ...."), SOLSA shows that the legislature anticipated this particular outcome. Specifically, SOLSA calls on the Judicial Department, on the one hand, and the Department of Corrections and the Parole Board, on the other, to collaborate in developing criteria governing the timing of a sex offender's release from indeterminate supervision. § 18-1.3-1009(1), C.R.S. (2020); see also Ehlebracht, ¶ 22, 480 P.3d at 733-34 (same). Given the lack of ambiguity in section 18-1.3-1004(5)(a), it would be improper for us to second-guess the legislature's policy choice based on the practical consequences of dual supervision. See Anderson, 102 P.3d at 330. In any event, it merits mention that "the conditions of SOISP are so much more restrictive than traditional probation and parole" that it is unlikely that conflicts in supervision will arise when, as here, a defendant is sentenced to prison for a non-sex offense and to SOISP for a sex offense. Ehlebracht, ¶ 22, 480 P.3d at 733.
19 In light of our holding, we do not reach Manaois's arguments concerning the proper remedy to correct illegal sentences under the circumstances present here. See Garcia v. People, 2019 CO 64, ¶ 39, 445 P.3d 1065, 1071 (explaining that the court didn't need to reach the second issue because, in answering the first issue, it had resolved the second issue). For the same reason, we do not pass judgment on the division's conclusion that Manaois's guilty pleas were induced by illegal sentences and were thus invalid. See id.
1 I use slightly different terminology than the majority. What the majority refers to as the "general sentencing statutes," I call the "general probation statutes." What the majority refers to as the "Sex Offender Lifetime Supervision Act" ("SOLSA"), I call the "sex-offense probation statute." I agree that "SOLSA is not simply a sex-offense probation act" and also contains imprisonment provisions, maj. op. ¶ 42 n.11, but in my view, we deal here primarily with the probation provisions.
2 At various points, the majority suggests that the sex-offense probation statute "contains a provision," maj. op. ¶ 63, "is not silent," id. at ¶ 67, or demonstrates a "lack of ambiguity," id. at ¶ 67 n.18, regarding prison-plus-SOISP sentences. In my view, however, the general and sex-offense probation statutes remain silent on prison-plus-SOISP sentences. I conclude, therefore, that the applicable sentencing statutes do not explicitly address prison-plus-SOISP sentences. The majority seems to acknowledge as much when it suggests that, "[h]ad the legislature intended to bar [prison-plus-SOISP sentences], it presumably would have said as much." Id. at ¶ 58 (emphasis added).
3 In committee hearing comments, Representative Anderson, the sponsor of the statute, explained that "[the statute] does not change the sentencing requirements already in law but it does establish lifetime probation and lifetime parole." Hearing on H.B. 1156 before the H. Judiciary Comm., 61st Gen. Assemb., 2d Sess. (Jan. 27, 1998) (statement of Representative Anderson). I agree.
4 Furthermore, I doubt the legislature intended to eliminate the requirement that courts determine whether imprisonment is the more appropriate sentence for sex offenders.
5 The majority paraphrases our discussion in Allman, suggesting that "either prison is necessary to protect the public, in which case a probation sentence is not permitted, or prison is not necessary to protect the public, in which case a probation sentence is permitted." Maj. op. ¶ 24 (citing Allman, ¶ 33, 451 P.3d at 833 ). The general probation statutes do not ask, however, whether prison is "necessary" to protect the public. Instead, the statutes ask whether prison is "more appropriate" to protect the public. § 18-1.3-203(1). The majority's paraphrase does not, in my view, avoid the choice between prison and probation: In any situation, there can be only one "more appropriate" sentence to protect the public—prison or probation.
6 The majority also suggests that "[t]he legislature was undoubtedly aware of the possibility of dual supervision, as it required," under section 18-1.3-1004(5)(a), "that a prison sentence for a sex offense be served consecutively to any sentence ... for another offense ... arising out of the same incident." Maj. op. ¶ 67 n.18. I disagree. That section does not suggest much of anything about the legislature's awareness of the possibility of dual commitments because, in my view, the legislature did not intend to allow prison-plus-SOISP sentences. Instead, the legislature intended sentences for a sex offense and a non-sex offense to be served either entirely on probation—during which sex offenders would have a sole commitment to probation—or entirely in prison—after which sex offenders would have a sole commitment to parole.
7 The circumstances of three companion cases, People v. Keen, 2021 CO 50, ––– P.3d –––– ; People v. Coleman, 2021 CO 52, ––– P.3d –––– ; and People v. Rainey, 2021 CO 53, ––– P.3d ––––, may eliminate this reason. These cases deal with what the majority refers to as "sex-related offenses," meaning offenses for which the sex-offense probation statute imposes participation in the SOISP program—but not for an indeterminate period. Keen, ¶ 1 & n.1. In such a scenario, prison-plus-SOISP sentences will not necessarily extend the period of post-incarceration supervision beyond the limits set by the legislature because the determinate periods of SOISP for sex-related offenses will not necessarily exceed the determinate periods of parole for non-sex offenses. Because I conclude that that the legislature did not intend to allow courts to sentence defendants to both imprisonment and SOISP in multi-count cases based on the collective weight of the reasons in this part, however, the elimination of one reason does not change my conclusion.